STEVENS et al. v. GALVESTON, H. & S. A. RY. CO. (No. 241.)

(Court of Civil Appeals of Texas. El Paso. Feb. 19, 1914. On Rehearing, April 23, 1914. On Second Rehearing, July 3, 1914. Third Motion for Rehearing Denied Oct. 5, 1914.)

1. RAILROADS (§ 69*)—RIGHTS OF WAY—CAPACITY TO ACQUIRE LAND.

A railway company may acquire, by purchase or donation, the fee-simple title to lands for its right of way, depot grounds, and other railway necessities.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 161–165; Dec. Dig. § 69.*]

2. RAILROADS (§ 69*)—RIGHTS OF WAY—ESTATE ACQUIRED.

Deeds which convey property to a railroad company, its successors and assigns, on condition that the property be used exclusively for railroad purposes, or so long as it shall be used for such purposes, convey the fee and not merely an easement.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 161–165; Dec. Dig. § 69.*]

3. RAILROADS (§ 72*)—CONVEYANCE OF DEPOT GROUNDS—CONSTRUCTION—CONDITION SUBSEQUENT.

A deed conveying property to a railroad company on condition that it be used exclusively for railroad depot grounds and railroad business purposes, and that if such premises shall cease wholly to be used for such purposes, they shall revert to the grantors or their successors, conveys the fee upon condition subsequent.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72.*]

4. DEEDS (§ 165*) — OPERATION — CONDITION SUBSEQUENT — PERSONS ENTITLED TO FORFEITURE.

Where property is conveyed upon condition subsequent, the title remains unimpaired even after breach, unless forfeited by the grantor or his heirs; the right to forfeit not being one which the grantor can convey.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 521; Dec. Dig. § 165.*]

5. DEEDS (§ 156*)—OPERATION — CONDITION SUBSEQUENT—PERSONS ENTITLED TO FORFEITURE—EASEMENT.

Where a deed conveys only an easement and not the fee, the right to maintain an action of forfeiture for breach of a condition subsequent is not limited to the grantor or his heirs, but may extend to the assignee of the grantor.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 496–499; Dec. Dig. § 156.*]

6. RAILROADS (§ 72*)—CONVEYANCES OF LAND FOR RAILROAD PURPOSES—CONSTRUCTION—CONDITION SUBSEQUENT—CONTINUOUS PERFORMANCE.

A condition subsequent, requiring the land conveyed to be used for railroad purposes, is one which requires continuous performance, and the fact that it has been performed for more than 30 years does not free the land from the condition.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72.*]

7. DEEDS (§ 166*) — OPERATION — CONDITION SUBSEQUENT—EXTINGUISHMENT.

Where the grantor who had conveyed land upon a condition subsequent, requiring continuous performance, thereafter quitclaimed all his

interest in such land to another, the land is freed from the condition.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 522–525; Dec. Dig. § 166.*]

**8. DEEDS (§ 160*) — CONSTRUCTION — CONDITION SUBSEQUENT—USE OF LAND.**

In a condition subsequent, providing for forfeiture in case the land should "cease wholly to be used" for railroad purposes, the word "wholly" modifies the word "cease," and not the phrase "to be used," or at least the condition is ambiguous and to be construed against the forfeiture, and therefore the leasing of a part of the premises to be occupied by a rock crusher does not constitute a breach of the condition.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 505–517; Dec. Dig. § 160.*]

Harper, C. J., dissenting.

### On Rehearing.

**9. RAILROADS (§ 82*)— CONVEYANCE TO RAILROAD COMPANY—OPERATION—LIMITATION — PERSONS ENTITLED TO BENEFIT.**

A deed conveying property to a railroad company for "so long as it should be used as a railroad right of way, and if not so used to revert to the grantors," conveys the premises upon limitation, which terminates on breach of the condition without the necessity of forfeiture, and not upon condition subsequent, and a subsequent quitclaim by the grantors of all their interest in the premises to a third person conveys the right to recover the land upon breach of the condition.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. § 82.*]

### On Second Rehearing.

**10. RAILROADS (§ 72*)—CONVEYANCE TO RAILROAD COMPANY—OPERATION — CONVEYANCE UPON LIMITATION—ESTOPPEL.**

A railroad company which accepted a deed upon limitation and entered into possession of the premises thereunder, is thereby estopped from asserting against its grantor a superior outstanding title to defeat the right to recover the premises upon breach of the condition and its acquisition of such outstanding title by deed or by adverse possession inures to the benefit of the original grantor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Horace B. Stevens and others against the Galveston, Harrisburg & San Antonio Railway Company, in which W. W. Mills and others intervened. Judgment for the defendant against both plaintiffs and interveners, and plaintiffs and interveners appeal. Judgment against interveners reformed and affirmed, and against plaintiffs affirmed. Motion for rehearing overruled, and on second rehearing judgment against plaintiffs modified and affirmed as modified.

Coldwell & Sweeney, of El Paso, and Williams & Neethe, of Galveston, for appellants. Beall & Kemp, of El Paso, and Baker, Botts Parker & Garwood, of Houston, for appellee.

McKENZIE, J. This was an action brought by appellants, Horace B. Stevens, Charles B. Stevens, and Z. T. White, against appellee, Galveston, Harrisburg & San Antonio Railway Company. The plaintiff sued in the alternative:

First. In the ordinary form of trespass to try title to recover an undivided three-fourths interest in 21.4 acres of land in El Paso county, Tex., and to recover an undivided three-fourths interest of the northerly half of blocks Nos. 3, 10, 42, and the southerly half of blocks 8, 9, and 43, as said blocks are designated upon the map of the city of El Paso, made by Anson Mills, the line dividing said blocks in the northerly and southerly half being drawn parallel with Main street in said city.

Second. a. In the alternative to recover an undivided three-fourths interest as aforesaid in the 21.4 acres, plaintiffs alleging that their predecessors in estate conveyed the three-fourths interest in said 21.4 acres to Charles Crocker upon certain limitations, particularly that said real estate should be used exclusively for railroad depot grounds and railroad business purposes; that the freight and passenger depot to be built and used by the said Crocker or his assigns should be at a certain place designated, and if the said premises should cease to be used wholly for the purpose aforesaid, then they should revert to the grantors, their successors or assigns; that said land was deeded to the said Crocker that he should in turn convey the same to the defendant; that the said Crocker conveyed the premises to the defendant, railway company, in terms of said deed to him as per the mutual agreement, and that at the date of such conveyance to the said Crocker, Thomas T. Gantt and David Rankin were the owners seised as of fee for several hundred acres of land in said city; that the said deed was made to said Crocker without further consideration than the prospective enhancement in value of said other lands by the use of such land as conveyed as railroad depot grounds and for railroad business purposes; that on or about January 1, 1910, the defendant had moved its passenger depot from the designated place, and had ceased to use said premises exclusively for railroad depot grounds and for railroad business purposes, alleging in the petition certain instances of cessation.

b. To recover an undivided three-fourths interest in the half blocks aforesaid, averring that their predecessors in estate conveyed said half blocks to defendant, railroad company, to be used by it and its successors so long as the same should be used as a railroad right of way, and, if not so used, should revert to the grantors; that defendant had abandoned the use of said half blocks as a railroad right of way, and were using them for purposes inconsistent with their use as a railroad right of way, alleging instances of such abandonment and inconsistent uses.

c. Plaintiff further alleged that defendant was claiming to be the absolute owner of

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

both the premises aforesaid, subject to no limitation, restriction, or condition whatsoever, and prayed that in event the plaintiffs were not entitled to recover said undivided interest of both of said premises, then that the right of plaintiffs under such restrictions, limitations, and conditions be established and defendant be decreed to hold said premises subject to such restrictions, limitations, and conditions.

d. W. W. Mills and his wife, Mary H. Mills, Philip Hague, James P. Hague, W. M. Coldwell, Clara Hague, Aileen Hague, Judyn Hague, Flora Hague, Mrs. Catherine Laubach and husband, H. L. Laubach, Mrs. Lillian Corcoran and husband, Thomas Corcoran, as heirs and representatives of James P. Hague, deceased, and Flora E. Hague, his wife, deceased, intervened in the suit, and claimed an undivided one-eighth interest not claimed by plaintiffs in the 21.4 acres.

The defendant pleaded not guilty, the five and ten year statute of limitation, denied it had abandoned the premises for railroad purposes, averred that it had always used them for railroad purposes and was still doing so, and that the same were necessary to defendant for railroad purposes, and that the plaintiffs and interveners are estopped by deed to claim any rights sought to be enforced by them in this action, because, it appeared from plaintiff's pleadings that their alleged rights are claimed through and under the said Gantt and Rankin, so far as the original plaintiffs are concerned and through W. W. Mills and Jas. P. Hague, so far as the interveners are concerned; that the said Gantt and Rankin conveyed to Charles Crocker under an agreement that he in turn, convey said land to defendant for railway purposes; that W. W. Mills and James P. Hague did convey said land to defendant for railway purposes; that both plaintiffs and interveners are estopped from maintaining that those through whom they derived their alleged rights in said property by the respective deeds referred to conveyed more land for railway purposes than was, is or may become necessary for said railway purposes in the future. Defendant further alleged in its answer that it built its passenger and freight depots upon the lands conveyed, constructed its tracks and other necessary improvements thereon in the year 1881, and has continuously, since that date, up to the present time, used said property for railway purposes, as expressed in the conditions of the respective deeds, with the consent of the city council and of the grantors executing said deeds, without objection or protest, but with the knowledge and acquiescence of plaintiffs and interveners; that at no time had said plaintiffs and interveners, or either of them, asserted any claim of forfeiture, on the ground that the use of said property was not sufficiently complete, or that the use of said lands and every part thereof was not in compliance with the conditions contained in said deeds; that if any cause

of forfeiture ever existed, the same has been waived and the plaintiffs and interveners are now estopped from asserting the same. Defendant also filed a cross-action against plaintiffs and interveners to have a perfect, fee-simple title in said premises decreed to be vested in it, and to have its title to said premises established and quieted.

The case was tried before the court without a jury. Judgment was rendered in favor of the defendant against the plaintiffs and interveners for all of the premises, quieted and established defendant's title thereto, and canceled plaintiffs' and interveners' claim to said premises as being a cloud upon the defendant's rightful title. The plaintiffs and interveners have appealed from the judgment entered to this court.

The conclusions of fact found by the trial court are as follows:

"First. I find that W. W. Mills and J. P. Hague did on, to wit, the 9th day of April, 1881, execute and deliver to the defendant, Galveston, Harrisburg & San Antonio Railway Company, the deed described in and attached to the interveners' petition, conveying a one-eighth undivided interest in the 21.4-acre tract of land involved in this suit, which interest in said tract of land the said W. W. Mills and J. P. Hague owned at the time when the deed was executed.

"Second. I further find that the real consideration in the execution of said deed was that said W. W. Mills and J. P. Hague at the time of executing said deed to the defendant company owned other property near and contiguous to said tract of land, and the probability that such other land would be enhanced in value by the defendant company putting the said 21.4-acre tract of land to its railway uses mentioned in said deed would enhance the value of such other property belonging to J. P. Hague and W. W. Mills, and enable them to derive a profit therefrom was the real moving consideration inducing said Hague and Mills to execute the deed, and I further find that such property was so enhanced in value and such profit was so derived.

"Third. I further find that said W. W. Mills and said J. P. Hague or his heirs, who are interveners herein, do not now, and did not at the time of the institution of this suit, own property contiguous to the said 21.4-acre tract of land or situated, so adjacent thereto as to be affected in value by the use the defendant is now or was at the time of the institution of this suit making of the land and premises, or by the use that said defendant may make of said premises in the future.

"Fourth. I further find that, beginning some time in the year '1881' the defendant has continuously, up to the present time, used said 21.4 acres of land for railway depot grounds and railway business purposes, and has, during all said time, maintained its freight depot upon said premises and its passenger depot in close proximity to said premises, at a point which was, as admitted by interveners' attorneys in open court, agreed upon the location of the defendant's passenger depot by J. P. Hague and W. W. Mills and representative of the defendant; and defendant has continuously since 1881 fully satisfied all the conditions as to the uses of said property as expressed and stipulated in said deed of April 9, 1881, from W. W. Mills and J. P. Hague to the defendant, Galveston, Harrisburg & San Antonio Railway Company, and has also, during all of said time, fully satisfied all the conditions set forth in the deed of Thomas T. Gantt and David Rankin, trustees of the estate of Robert Campbell, to Charles Crocker, dated January 25, 1881, and the interveners no longer have any financial interest

in the question of whether or not such conditions as to the uses be complied with in the future.

"Fifth. I further find that Thomas T. Gantt and David Rankin, trustees of the estate of Robert Campbell, deceased, and Virginia J. Campbell and Hugh Campbell, Jr., as beneficiaries in said trust, did, on, to wit, January 25, 1881, claim a six-eighths interest in and to the 21.4 acres of land hereinbefore referred to and described in plaintiffs' petition, and also some interest not exceeding six-eighths interest in the northerly halves of blocks 3, 10, and 42, and the southerly halves of blocks 8, 9, and 43, of the city of El Paso, as designated upon the map of said city, made by Anson Mills; and that on said 25th day of January, 1881, they executed the deed described in plaintiffs' petition, copy of which is attached to same and marked 'Exhibit A,' conveying to Charles Crocker all their right, title, and interest in said 21.4-acre tract of land, upon the terms and conditions in said deed.

"I further find that some time thereafter Charles Crocker did convey the said 21.4 acres of land to the defendant, Galveston, Harrisburg & San Antonio Railway Company, as alleged by plaintiffs and admitted by defendant in their respective pleadings, but I do not find that any conditions or limitations of title or uses of said premises were expressed or inserted in the said deed from Charles Crocker to the defendant, Galveston, Harrisburg & San Antonio Railway Company.

"And I further find that the said Gantt & Rankin, as trustees, and the said Virginia J. Campbell and Hugh Campbell, Jr., as beneficiaries of said trust, did on, to wit, the 8th day of June, 1881, execute and deliver to the defendant, Galveston, Harrisburg & San Antonio Railway Company, the deed of that date, described in plaintiffs' petition, a copy of which is attached to plaintiffs' petition, and marked 'Exhibit B,' conveying all their right, title, and interest and claim in and to certain other property, and also the northerly halves of blocks numbered 3, 10, and 42, and the southerly halves of blocks numbered 8, 9, and 43 in the city of El Paso, as designated upon the map of said city, made by Anson Mills.

"Sixth. I further find that the said 21.4 acres of land has been used by the defendant, railway company, continuously since 1881 for railroad depot grounds and railroad business purposes, and that the freight and passenger depots of the defendant have been built and used for more than 30 years substantially in the locations designated in said deed from Gantt and Rankin, trustees, and others to Charles Crocker, dated January 25, 1881, and the defendant company has never ceased to use said 21.4 acres for the purposes mentioned in said deed last named, but has fully complied for more than 30 years continuously with all the conditions in said deed.

"Seventh. I further find that the northerly halves of blocks numbered 3, 10, and 42 and the southerly halves of blocks numbered 8, 9, and 43, as designated on the Anson Mills' map of the city of El Paso, have been used continuously by the defendant company from some time in 1881 up to the present time, and are now being used, as a railroad right of way, and have been continuously, during all of said period, for more than 30 years used by the defendant for the purposes for which railroad right of ways are necessarily and ordinarily used by railroad companies generally; and I find that the defendant has, for more than 30 years, fully complied with all the conditions of said deed, dated June 8, 1881, from Thomas T. Gantt and David Rankin, trustees, and Virginia J. Campbell and Hugh Campbell, Jr., beneficiaries in said trust, to the defendant company.

"Eighth. I further find as admitted by plaintiffs in their petition, that the defendant is the owner of an undivided two-eighths interest in and to the half blocks above mentioned, independent of the six-eighths interest therein claimed by plaintiffs in their petition.

"Ninth. I further find that the defendant company, as to one-eighth interest in said 21.4 acres above referred to and described in plaintiffs' and interveners' petition, has regular chain of title from the sovereignty of the soil, acquiring said title to one-eighth interest through deed from Jas. F. Crosby to the Galveston, Harrisburg & San Antonio Railway Company, dated March 23, 1881.

"Tenth. I further find that Wm. S. Hills, having at that time title to one-eighth interest in the then unsold lots and blocks in the city of El Paso, including blocks 3, 10, and 42, and 8, 9, and 43, as designated on the Anson Mills' map of said city, did on, to wit, the 9th day of June, 1881, execute and deliver to the defendant company his deed, conveying the north halves of blocks 3, 10, and 42 and the south halves of blocks 8, 9, and 43 as laid off on Anson Mills' map of El Paso, Tex.; said halves of said blocks 3, 10, and 42, and 8, 9, and 43, being the halves lying upon Main street and extending back to a line running through the center of said block and parallel with main street; also all his right in the streets and alleys included within a line running entirely around all of said half blocks.

"Eleventh. I further find that the plaintiffs herein claim the interest asserted by them in the north halves of blocks 3, 10, and 42 and the south halves of blocks 8, 9, and 43 through a deed signed by James P. McKinney, as assignee in bankruptcy of H. S. and J. S. Gillett, dated February 21, 1871, and purporting, as such assignee, to convey to Robert Campbell by quitclaim all right, title, claim, and interest of Henry S. and John S. Gillett in a certain tract of land of which said blocks were a part, but no evidence was introduced to show the authority of the said McKinney as assignee in bankruptcy of H. S. and J. S. Gillett, nor to show that there was ever any adjudication of bankruptcy, or that there was any appointment or qualification of the said James P. McKinney as assignee in bankruptcy of H. S. and J. S. Gillett, nor was there any evidence of any conveyance whatsoever to James P. McKinney as assignee.

"Twelfth. I further find that, on, to wit, December 12, 1868, Henry S. Gillett and John S. Gillett did convey to B. F. Williams and Wm. M. Pierson blocks 8, 9, 42, and 43 in the city of El Paso, according to Anson Mills' map, and that said title, passing by said deed to said William M. Pierson, was on, to wit, October 22, 1881, for valuable consideration, conveyed by him to the defendant company as to an undivided three-eighths of the south halves of blocks 9 and 43 and an undivided three-eighths of the north halves of block 42.

"I further find that the said B. F. Williams, by deed dated August 19, 1870, did convey to Wm. W. Williams, an undivided three-eighths interest in said blocks numbered 8, 9, 42, and 43, and on, to wit, October 22, 1881, Wm. W. Williams did for a valuable consideration convey to the defendant company an undivided three-eighths interest in the south halves of blocks numbered 9 and 43 and the north half of block 42.

"Thirteenth. I further find that the defendant, Galveston, Harrisburg & San Antonio Railway Company, has continuously, since some time in 1881, up to the present time, occupied for railroad purposes, and had actual possession of the 21.4 acres of land involved in this suit, and also each of said one-half blocks described in plaintiffs' petition and involved in this suit, being continuously, during all that time in actual possession of some part of each of said half blocks and using same for railroad purposes.

"Fourteenth. I further find that plaintiffs claim an interest in the property involved in this suit only by and through a quitclaim deed from the Campbell Real Estate Company by them introduced in evidence, and that none of the plaintiffs are grantors or the heirs of grant-

ors under or through whom the defendant claims title to the lands involved in this suit, or any part thereof, or any interest therein, nor are the grantors, or any of them, successors, in trust to Thomas T. Gantt and David Rankin, mentioned in plaintiffs' petition.

"Fifteenth. I further find that, as appears from the record in this case, the defendant, Galveston, Harrisburg & San Antonio Railway Company, has good title in fee to each and every part of all the lands involved in this suit, and neither plaintiffs nor interveners, nor any of them, have any right, title, or interest in said land, or any part of same.

"Sixteenth. I further find that when Thomas T. Gantt and David Rankin, as trustees of the Robert Campbell estate, and Virginia J. Campbell and Hugh Campbell, Jr., as beneficiaries in said trust, executed the deeds described in plaintiffs' petition and copies of which are attached thereto, to wit, their deed dated January 25, 1881, to Charles Crocker, and their deed dated June 8, 1881, to the defendant company, they owned other property near and contiguous to the lands described in such deeds, and the probability that such other lands would be enhanced in value by the defendant company making use for railway purposes of the lands described in such deeds, and thereby enable the said Thomas T. Gantt and David Rankin, as the trustees of the estate of Robert Campbell, deceased, and Virginia J. Campbell and Hugh Campbell, Jr., as beneficiaries of such trust, to derive a profit from such anticipated increase or enhancement in value, was the one moving consideration inducing the execution and delivery of such deeds, and I further find that such property was so enhanced in value, and such profit was so derived.

"Seventeenth. As to the 21.4-acre tract above referred to, I find: (a) That the main line, switches, spur tracks, and numerous other tracks incident to the operation of the road are situated thereon; (b) that the freight depot, platforms, transfer, and house tracks, machine shops, blacksmith shops, and various buildings, sheds, rooms, etc., necessary to the operation of the railroad and incident to its business, are situated thereon; (c) that the resident of the superintendent, resident engineer and employés' quarters, all of which I find are necessary to the operation of the railroad and the maintenance of its yards, are situated thereon; (d) I also find that ——— acres of said 21.4-acre tract is leased by the defendant company to the Texas Bitulithic Company for its rock crusher, and I find that same is for the use and benefit of the defendant company in transporting rock and unloading the same at the said point, thereby relieving the company from the necessity of delivering the said rock at its freight depot, and that the said aforesaid uses of said property are for railroad purposes, and that it has been so used for many years without protest or objection.

"Eighteenth. As to that part of the southerly half of block 43, I find that the northeast part of said property is used as a place of residence of the master mechanic and the westerly portion thereof is leased to the San Antonio Brewing Association for cold storage rooms, the chief consideration being the shipping over the defendant company's line into El Paso of the Brewing Company's products, thus promoting traffic for the company; and I find that the southerly portion of said property is being used by coach and spur tracks incident to the company's business, and that all of said property is now being used for railroad purposes.

"Nineteenth. I find, as to the northerly half of block 42, that the same is being wholly used for railroad purposes, there being numerous tracks thereon continually being used by the defendant company in the carrying on of its business.

"Twentieth. I find, as to the northerly half of block 10, that it is being used for depot grounds; that defendant has erected and has maintained for many years, and is maintaining a bona fide depot thereon for use by the public, and keeps a ticket and baggage agent therein and an office at which tickets may be purchased and where defendant's passenger trains stop regularly to take on and put off passengers; and I find that the building of the Brown News Company, the cellroom of the telegraph apparatus, etc., are on this property. I also find that the superintendent's office, dispatcher's office, and offices of other officials and employés of the defendant company are on this property, and have been so for many years.

"I also find in this connection that the defendant company uses the Union Depot in El Paso, Tex., and maintains an agent therein and operates its trains in and out of same, and that its use of said Union Depot is not inconsistent with its use of the depot on the property in block 10, and that its use of said Union Depot is not an abandonment of the depot on the property in block 10.

"Twenty-First. I find that there has been no abandonment by defendant of the southerly half of block 8 and the northerly half of block 3; that on the northerly half of block 3 there is situated one of defendant's spur tracks and tower houses.

"Twenty-Second. I find as to the southerly half of block 8 that the same is now inclosed and grass planted thereon; that the same has not been abandoned by defendant for the purpose for which it was purchased, but I find that it will be needed and required by defendant in the future as the increasing business of the railway company may require.

"Twenty-Third. I find, as to the southerly half of block 9, that it is used by defendant company for railway purposes, and that across it are constructed defendant's spur tracks, which it is continually using, and that defendant has not abandoned any portion thereof, but is using and intending to use all of same for the purpose for which it was purchased.

"Twenty-Fourth. I refer to the map introduced in evidence, marked 'Exhibit A,' and hereto attached for more particular description and designation of the railway company heretofore mentioned in these findings of fact."

The deed dated January 25, 1881, by Gantt & Rankin, trustees, and by Virginia J. Campbell and Hugh Campbell, Jr., to Charles Crocker, mentioned in the trial court's finding of fact as "Exhibit A," is as follows:

"Know all men by these presents, that we, Thomas T. Gantt and David Rankin of St. Louis, Missouri, trustees of the estate of Robert Campbell, Virginia Campbell, his wife, by their deed of February 14, 1877, registered in El Paso county, Texas, January 8, 1881, parties of the first part, by virtue of the power vested in us by said deed and at the written request of said Virginia J. Campbell and of Hugh Campbell, Jr., as evidenced by their signatures hereto, and in consideration of one (1) dollar to us paid by Charles Crocker, of San Francisco, the party of the second part, do by these presents, grant, bargain and sell unto the said Charles Crocker all our right, title and interest in the following real estate, situated in the city of El Paso, El Paso county, Texas, and located between the southerly line of Franklin street and the northerly line of St. Louis street, said lines being produced northeasterly conforming to other directions as shown on the map of El Paso as surveyed and drawn by Anson Mills and lying east of a line parallel of east line of Kansas street and situated three hundred and thirty (330) feet therefrom measured along center line of Main street produced northerly and in conformity with direction of Main street as shown on said map of Anson Mills and more particularly described as follows:

"Beginning at a point situated north fifty-

three degrees east (Nor. 53 deg. E) and distant seventy (70) feet from northeasterly corner of block number forty-three (43) of Anson Mills' survey and map of El Paso, thence extending north fifty-three degrees east (N. 53 deg. E) fifteen hundred and eighty (1580) feet; thence south thirty-seven degrees east (S. 37 deg. E) five hundred and ninety (590) feet to place of beginning and containing twenty-one and $4/10$ acres more or less.

"To have and to hold said real estate with all its appurtenances unto said Charles Crocker, his heirs and assigns forever. On condition, nevertheless, that said real estate shall be used exclusively for railroad depot grounds and railroad business purposes and that the freight and passenger depots to be built and used by said second party or his assigns shall be within two hundred and ninety-five (295) feet in a northerly or southerly direction from the center line of Main street and within three hundred and sixty-five (365) feet of the center line of Kansas street as said streets are shown on said map of Anson Mills or that said freight and passenger depots shall be at any point easterly or westerly from the intersection of said Main street and Kansas street that said first and second parties, their successors or assigns may mutually agree upon and that if said premises shall cease wholly to be used for the purposes herein contained they shall revert to the grantors or their successors.

"In testimony whereof we have hereunto set our hands and seals and the said Virginia J. Campbell and Hugh Campbell, Jr., have signed these presents this the 25th day of January, A. D. 1881."

Crocker thereafter conveyed to the defendant railway company the said lands described in the deed.

The deed dated June 8, 1881, from Gantt & Rankin, trustees, to the appellee, being mentioned in the trial court's fifth finding of fact as "Exhibit B," is as follows:

"Know all men by these presents, that we, Thomas T. Gantt and David Rankin of the city of St. Louis, state of Missouri, trustees under a certain deed of settlement to us made to Robert Campbell (now deceased), dated February 14, 1877, and acting herein at the request of Virginia J. Campbell and Hugh Campbell, Jr., of the same place (as evidenced by their signatures to this deed) in consideration of the sum of one (1) dollar to said Virginia J. Campbell and Hugh Campbell, Jr., and the further sum of one dollar to us paid by the Galveston, Harrisburg & San Antonio Railway Company, a corporation incorporated under the laws of the state of Texas, the receipt of which several sums of money is by said recipients hereby respectively acknowledged, have remised, and released, and hereby do remise, release and quitclaim unto said Galveston, Harrisburg & San Antonio Railway Company and its successors and assigns forever, the following described real estate, lying and being in the city of El Paso, county of El Paso, state of Texas, and described remainder and remainders, rents, issues and their interests in and to all that certain piece or parcel of land situated in the county of El Paso and state of Texas, and described as follows, to wit: A strip of land one hundred (100) feet wide lying fifty (50) feet wide on each side of the center line of said company's railway where the same is located through the lands of the parties of the first part from the point where said center line enters the northerly boundary line of said land being the southerly boundary line of the Hart survey No. nine (9) as shown on the map of the city of El Paso made and surveyed by Anson Mills to the point where said center line reaches the center line of San Francisco street, including all the lands of the parties of the first part lying within thirty-five (35)

feet of the center line of said railway in block designated as block number forty-eight (48) of the Anson Mills map, also the right of way for said company's railway through Main street extended to the easterly boundary line of the lands of said parties of the first part. Area of land so granted, four $75/100$ (4.75) acres, more or less, also all those pieces or parcels of land lying and being in the city of El Paso and described as follows, to wit: the northerly half of block numbers three (3), ten (10), and forty-two (42) and the southerly half of blocks numbers eight (8), nine (9) and forty-three (43) as the same are laid off and designated upon the map of the city of El Paso, surveyed and made by Anson Mills; the said halves of said blocks 3, 10, 42, 8, 9 and 43 being the halves lying upon Main street and extending back to a line running through the center of said blocks and parallel with Main street and including also all the right, title and interest in or claim to the rights of the said parties of the first part in to and over the streets included within the boundary of a line extending around the said halves of blocks. To have and to hold, all and singular, the premises, with all the rights, privileges and appurtenances thereunto appertaining unto the said Galveston, Harrisburg & San Antonio Railway Company and its successors and assigns so long as the said land shall be used as a railroad right of way and if not so used shall revert to the grantors herein. In witness whereof, said Thomas T. Gantt and David Rankin as grantors and said Virginia J. Campbell and Hugh Campbell, for the purposes mentioned, have hereunto set their hands and seals this the eighth day of June, A. D. 1881."

The deed dated April 9, 1881, whereby W. W. Mills and J. P. Hague convey a one-eighth undivided interest in the 21.4-acre tract of land involved in this suit, as mentioned in the trial court's finding of fact, is as follows:

"This indenture made the ninth day of April in the year of our Lord one thousand eight hundred and eighty one between W. W. Mills and J. P. Hague, of the county of El Paso and state of Texas, parties of the first part, and the Galveston, Harrisburg & San Antonio Railway Company, a corporation duly incorporated under the laws of the state of Texas, party of the second part, Witnesseth: Said parties of the first part for and in consideration of the sum of one dollar lawful money of the United States of America to them in hand paid, by said parties of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed, and by these presents, do grant, bargain, sell and convey unto said the party of the second part, and to its heirs and assigns forever all those certain lots, pieces or parcels of land situate, lying and being in the city of El Paso, county of El Paso and state of Texas, bounded and particularly described as follows, to wit: Land situated in the city and county of El Paso, state of Texas, and located between the southerly line of Franklin street and the northerly line of Saint Louis street, said line being produced northeasterly conforming to the directions as shown on the map of the city of El Paso as surveyed and drawn by Anson Mills and lying east of a line parallel to the east line of Kansas street, and situated three hundred and thirty (330) feet therefrom, measured along the center line of Main street produced northeasterly and in conformity with the direction of Main street as shown on said map of Anson Mills, and more particularly described as follows: Beginning at a point situated north 53 degrees east and distant seventy (70) feet from the northeasterly corner of block number forty-three (43) of Anson Mills survey and map of El Paso; thence extending north 53 degrees east fifteen hundred and eighty (1580) feet; thence south 37 degrees east five hundred and ninety (590) feet; thence

south 53 degrees west fifteen hundred and eighty (1580) feet; thence north 37 degrees west five hundred and ninety (590) feet to the place of beginning and containing an area of twenty-one and four-tenths (21.4) acres of land, more or less; the said tracts or parcels of land to be used for depot grounds and railway purposes, by said company on conditions set forth in deed of Thomas T. Gantt and David Rankin of Saint Louis, Missouri, trustees of the estate of Robert Campbell, to Charles Crocker, dated January 25, A. D. 1881, except that the freight and passenger depots therein named may be located three hundred and thirty (330) feet further northeastwardly from the center line of Kansas street. And in case the said parcels of land are not used by said railway company for passenger and freight depots and railway purposes, then in that case all the right, title and interest therein conveyed shall revert to and again be vested in the said parties of the first part; and if said railway company abandons the use of said land for said purposes, all buildings and fixtures erected thereon by said company shall be held part and parcel of said land and shall revert with the same to the said parties of the first part. Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, property, possession, claim and demand whatsoever as well in law as in equity of the said parties of the first part, of, in or to the above described premises and every part and parcel thereof with the appurtenances. To have and to hold all and singular the above mentioned and described premises, together with the appurtenances unto the said party of the second part, its heirs and assigns forever, for the purposes and on the conditions above set forth.

"In witness whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written."

Each of the foregoing deeds were duly executed by the respective parties conveying the lands. The Mills and Hague deed, though purporting to convey the entire land therein described, did in fact convey only an undivided eighth interest.

[1] We are of the opinion that the law is settled in this state that a railway company may acquire by purchase or donation the fee-simple title to lands for its right of way, depot grounds, and other railway necessities. Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S. W. 453.

[2, 3] We hold that the foregoing deeds convey the title to the land in fee, and not the mere easement for right of way, depot grounds, and railroad purposes, as contended for in this appeal by the appellants. It is clear from the language of the deeds that the parties intended to convey, and did convey, the land, and not a mere easement therein. True the estate so conveyed is, in each instance, upon condition subsequent, nevertheless the fee passes upon condition subsequent, in the same manner and to the same extent as if the condition did not exist, subject only to the contingency of being defeated as provided for in the condition. Devlin on Real Estate, § 959.

[4] When lands are conveyed upon condition subsequent the condition does not limit the title until, by breach, it becomes operative to defeat it, and no one can take advantage of the breach of a condition subsequent but the grantor or his heirs. If they do not take steps to enforce a forfeiture of the estate on the ground of a breach of the condition, the title remains unimpaired in the grantee. Devlin on Real Estate, § 969; Warvelle on Vendors, art. 447. Such is the common law, and is the law of this state, in the absence of any statutory enactment.

The possibility of a right of re-entry where the fee to the land is conveyed upon condition subsequent is personal to the grantor or his heirs, and remains at all times in them. It is not an estate in land, and cannot be conveyed. See authorities cited in note, 60 L. R. A. 750.

[5] Where, however, a deed conveys only an easement and not the fee, the right to maintain an action of forfeiture for breach of a condition subsequent is not limited to the grantor or his heirs, but may extend to the assignee of the grantor or heirs. Reichenbach et al. v. Washington Short Line Ry. Co., 10 Wash. 357, 38 Pac. 1126.

[6] The conditions expressed in the foregoing deeds require continuous performance. The trial court has found, and the evidence sustains the finding, that the conditions have been and are being fulfilled. It follows that plaintiffs' and interveners' cause of action, in so far as the same is predicated upon a breach of, or nonperformance of, the conditions, must fail.

Appellee contends, however, that because it has for more than 30 years continuously performed the conditions required of it by the several deeds, such conditions are discharged, and its title to the land is absolute and unconditional. The general rule is that where a condition is once performed, unless it is one which requires continuous performance, it is thenceforth entirely gone, and the thing to which it was before annexed, becomes absolute and wholly unconditional. Warvelle on Vendors, § 448. The exception mentioned in the general rule is applicable to the case at bar, in that the conditions are such as require continuous performance, and, while being performed, the duration of time which might elapse during such performance will not, of itself, cause a discharge or a release of the conditions. Such an estate so held by a grantee will remain defeasible until the conditions are discharged or barred by the statute of limitations or by estoppel.

[7] It appears by the record that after the deeds of January 25, 1881, and of June 8, 1881, were executed, the grantors therein sought to convey all their right, title and interest, then remaining in them, to the lands sued for by the plaintiffs to other parties, and by mesne conveyances such title and interest were vested in the Campbell Real Estate Company, a corporation. On March 23, 1900, the Campbell Real Estate Company

quitclaimed to the plaintiffs. It is by this quitclaim deed that plaintiffs seek to connect themselves with the title to the land. As found by the trial court, none of the plaintiffs are grantors, heir or successors in trust to any of the grantors of the deeds of January 25th and June 8th, aforesaid, and therefore are not entitled to recover herein. Though the subsequent conveyances by the original grantors in the two deeds of January 25th and of June 8th are insufficient to confer upon their subsequent grantees, or their successors in conveyance, the right to exercise the right to recover any of the lands in said original deeds described, yet such deeds or conveyances do serve to wholly release and discharge the conditions stipulated in said original deeds. This holding seems to be the settled law. In Berenbroick v. St. Luke's Hospital, 23 App. Div. 339, 48 N. Y. Supp. 365, it is said:

"It is well settled that where a deed of property in fee is made, with a condition subsequent imposed, and a right of re-entry reserved to the grantor, the right of re-entry is a mere right in action, and not an interest in the land; that it is not assignable nor grantable; that it descends to the grantor's heirs, but does not pass by a conveyance. And any deed by which the original grantor, or his heirs, undertakes to transfer, assign, or grant the land, or the reversion of it, while it may be ineffectual to convey title to the grantee, does operate to put an end to the rights of the grantor. 6 Am. & Eng. Enc. Law, 904; Underhill v. Railroad Co., 20 Barb. [N. Y.] 455; Post v. Weil, 8 Hun [N. Y.] 418; Washb. Real Prop. (5th Ed.) 118; Ger. Real Estate (3d Ed.); Tinkham v. Railroad Co., 53 Barb. [N. Y.] 393–396; De Peyster v. Michael, 6 N. Y. 468, 506 [57 Am. Dec. 470]; Nicoll v. Railroad Co., 12 N. Y. 121; Towle v. Remsen, 70 N. Y. 305. The city (the grantor in the deed of 1848, which imposed the condition in question), by its later deed to the hospital defendant, sold, conveyed, and released the property, and all its interest therein; and this deed clearly operated to release the land from the condition. The right to re-enter for breach of condition was gone forever, and the condition has never since that time affected or restricted the hospital defendant's interest in the property."

The principle announced in Berenbroick v. St. Luke's Hospital, supra, is decisive of the case as between plaintiffs and the appellee. As stated, the grantors in the deeds dated January 25, 1881, and June 8, 1881, having, subsequent to said date, by deed conveyed to parties who were strangers in estate, all their right, title and interest in and to the lands involved, by such acts, discharged the conditions in each of said deeds, and appellee's title thereby became absolute, freed from such conditions.

Independent of the rights of appellee to recover on its cross-action as hereinabove indicated, it appears that by the eighth finding of fact it proved its title to an undivided two-eighths interest in the half blocks described in plaintiffs' petition, and by the eleventh and twelfth finding of fact it appears that Henry S. Gillett and John S. Gillett conveyed to B. F. Williams and William M. Pierson blocks 8, 9, 42, and 43 at a time prior to any conveyance by Jas. P. McKinney, as assignee in bankruptcy of the said Gilletts, to Robert Campbell, and by mesne conveyances, the appellee appears to have acquired the remaining sixth-eighth interest as was conveyed to the said B. F. Williams and William M. Pierson of the south halves of blocks 9 and 43, and of the north half of block 42. It would also appear by the eleventh finding of fact that the plaintiffs failed to make proof of authority of the said McKinney as assignee in bankruptcy of the said Gilletts to make any conveyance of any of said property to the said Robert Campbell. From these findings it would appear that appellee is entitled to recover of the plaintiffs on its cross-action the half blocks of land described in plaintiffs' petition.

[8] Appellants contend that the word "wholly" as used in the condition expressed in the deed dated January 25, 1881, relates to the words, "to be used," and not to the word, "cease," and that because the appellee had leased a part of the 21.4 acre tract to the Texas Bitulithic Company for its rock crusher, said act on the part of the appellee was a breach of the condition, as expressed in the deed conveying said land. We are of the opinion that the word "wholly," as used in the conditions relates to the word "cease" and not to the words "to be used." In any event, however, if there be doubt as to the proper interpretation to be given, since forfeitures are not favored, the construction which is most favorable to the grantee and against forfeiture should prevail. The trial court settled the issue by its finding under section "d" of the seventeenth finding of fact, that in permitting the Texas Bitulithic Company to use part of its premises for its rock crusher the appellee did so for its own benefit in transporting rock and unloading the same, and that such was a proper and legitimate railroad use, as provided for in the deeds.

It will be noted that interveners brought their suit as the heirs of Mills' and Hague, and though they are not entitled to a recovery against appellee because of any breach of the conditions as stipulated in their deed, yet the judgment as rendered by the trial court should be reformed to the extent that the appellee should not recover of the interveners the title to the one-eighth interest of the land as sued for by the interveners, free from the conditions as stipulated for in the Mills and Hague deed, because such conditions require continuous performance—and a breach of the conditions may subsequently occur which would give them a right of action.

The assignments of error of the plaintiffs and interveners are disposed of from what has been said in the foregoing discussion. We deem it unnecessary to take up each assignment and dispose of it separately. It becomes necessary, therefore, that the judgment of the trial court be reformed to the extent that appellees take nothing by its cross-

action against the interveners. As reformed, the judgment of the trial court is in all other respects affirmed; and it is so ordered.

HARPER, C. J. (dissenting). I cannot concur in the majority opinion in this case for the following reasons:

The assignments which charge that the trial court erred in its construction of the deeds, under which appellees claim title, as to the class of estate thereby conveyed, and in holding that the conditions of said deeds could be satisfied and rendered of no future effect by compliance therewith for a long period of time, and in holding that only the grantors and their heirs could take advantage of the conditions should be sustained.

I concede that the majority opinion is a proper disposition of this appeal if the construction of the deeds relied on by appellee is correct, i. e., if the deeds hereinafter copied in full, convey the fee in the land described therein upon condition subsequent, then H. B. and C. B. Stevens and Z. T. White cannot recover in this action, in the condition of the record now before us, and I further agree that the appellee should not recover against the interveners, heirs of Mills and Hague, for they still retain the reversionary interest, and upon the condition being broken in the future the then heirs, under present conditions, are entitled to again possess the fee.

The majority opinion may be correct; there is no suggestion in the opinion as to the line of reasoning, or upon what wording or stipulations in the deeds the construction therein asserted is arrived at; it merely asserts that:

"We hold that the foregoing deeds convey the title to the land in fee, and not the mere easement for right of way, depot grounds and railroad purposes, as contended for in this appeal by the appellants. It is clear from the language of the deeds that the parties intended to convey the land and not the mere easement therein."

The only authority cited for this holding is Devlin on Real Estate, § 959, which simply passes upon the question of how the fee passes upon condition subsequent, and does not attempt to give any rule by which we are to determine whether the fee was in fact conveyed by the instruments construed. As I view these deeds, the least that can be said of them is that they come squarely within the case of McBride v. Farmers', etc., Gin Co., 152 S. W. 1135, and Stewart v. Blain, 159 S. W. 928, wherein it was held that deeds containing substantially the same words of limitation were not strictly conditions subsequent, but of conditional limitation, and that a breach thereof inured to the benefit of the owner of the title. But in my opinion, when viewed in the light of the established rules of construction of deeds, in this state, these deeds convey an easement only. The deeds relied on, copied in full from the record, are as follows:

"Know all men by these presents, that we, Thomas T. Gantt and David Rankin of St. Louis, Missouri, trustees of the estate of Robert Campbell, Virginia Campbell, his wife, by their deed of February 14, 1877, registered in El Paso county, Texas, January 8, 1881, parties of the first part by virtue of the power vested in us by said deed and at the written request of said Virginia J. Campbell and Hugh Campbell, Jr., as evidenced by their signatures hereto, and in consideration of one (1) dollar to us paid by Charles Crocker of San Francisco the party of the second part. Do by these presents grant, bargain and sell unto said Charles Crocker all our right, title and interest in the following real estate situated in the city of El Paso, El Paso county, Texas, and located between the southerly line of Franklin street and the northerly line of St. Louis street, said lines being produced northeasterly conforming to other directions as shown on the map of El Paso as surveyed and drawn by Anson Mills and lying east of a line parallel of east line of Kansas street and situated three hundred and thirty (330) feet therefrom measured along center line of Main street produced northerly and in conformity with the direction of Main street, as shown on said map of Anson Mills and more particularly described as follows:

"Beginning at a point situated north fifty-three degrees east (Nor. 53° E.) and distant seventy (70) feet from northeasterly corner of block number forty-three (43) of Anson Mills' survey and map of El Paso, thence extending north fifty-three degrees east (No. 53 deg. E.) fifteen hundred and eighty (1580) feet; thence south thirty-seven degrees east (S. 37° E.) five hundred and ninety (590) feet to place of beginning and containing twenty-one and 4/10 acres more or less.

"To have and to hold said real estate with all its appurtenances unto said Charles Crocker, his heirs and assigns forever. On condition nevertheless that said real estate shall be used exclusively for railroad depot grounds and railroad business purposes and that the freight and passenger depots to be built and used by said second party or his assigns shall be within two hundred and ninety-five (295) feet in a northerly or southerly direction from the center line of Main street and within three hundred and sixty-five feet (365) of the center line of Kansas street as said streets are shown on said map of Anson Mills or that said freight and passenger depots shall be at any point easterly or westerly from the intersection of said Main street and Kansas street that said first and second parties their successors or assigns may mutually agree upon and that if the said premises shall cease wholly to be used for the purposes herein contained they shall revert to the grantors or their successors.

"In testimony whereof we have hereunto set our hands and seals and the said Virginia J. Campbell and Hugh Campbell, Jr., have signed these presents this the 25th day of January, A. D. 1881."

"Know all men by these presents, that we, Thomas T. Gantt and David Rankin of the city of St. Louis, state of Missouri, trustees under a certain deed of settlement to us made to Robert Campbell (now deceased) dated February 14th 1877, and acting herein at the request of Virginia J. Campbell and Hugh Campbell, Jr., of the same place (as evidenced by their signatures to this deed) in consideration of the sum of one (1) dollar to said Virginia J. Campbell and Hugh Campbell, Jr., and the further sum of one dollar to us paid by the Galveston, Harrisburg & San Antonio Railway Company, a corporation, incorporated under the laws of the state of Texas, the receipt of which several sums of money is by said recipients thereby respectively acknowledged, have remised and released, and hereby do remise, release and quitclaim unto said Galveston, Harrisburg & San Antonio Railway Company and its successors and assigns forever, the following described real

estate, lying and being in the city of El Paso, county of El Paso, state of Texas, and described as follows, to wit: All there and each of their interests in and to all that certain piece or parcel of land situated in the county of El Paso and state of Texas and described as follows, to wit: A strip of land one hundred (100) feet wide lying fifty (50) feet wide on each side of the center line of said company's railway where the same is located through the lands of the parties of the first part from the point where said center line enters their northerly boundary line of said land being the southerly boundary line of the Hart survey number nine (9) as shown on the map of the city of El Paso made and surveyed by Anson Mills to the point where said center line reaches the center line of San Francisco street, including all the land of the parties of the first part lying within thirty-five (35) feet of the center line of said railway in block designated as block number forty-eight (48) of the Anson Mills map, also, the right of way for said company's railway through Main street extended to the easterly boundary line of the lands of said parties of the first part. Area of land so granted, four $^{75}/_{100}$ (4 $^{75}/_{100}$) acres more or less. Also all those pieces or parcels of land lying and being in the city of El Paso and described as follows, to wit: the northerly half of block numbers three (3), ten (10) and forty-two (42) and the southerly half of blocks numbers eight (8), nine (9) and forty-three (43) as the same are laid off and designated upon the map of the city of El Paso surveyed and made by Anson Mills; the said halves of said blocks 3, 10, 42, 8, 9, and 43, being the halves lying upon Main street and extending back to a line running through the center of said blocks and parallel with Main street and including also all the right, title and interest in or claim to the rights of the said parties of the first part into and over the streets included within the boundary of a line extending around the said halves of blocks. To have and to hold, all and singular, the premises, with all the rights, privileges, and appurtenances thereunto appertaining unto said Galveston, Harrisburg & San Antonio Railway Company and its successors and assigns so long as the said land shall be used as a railroad right of way and if not so used shall revert to the grantors herein. In witness whereof, said Thomas T. Gantt and David Rankin as grantors and said Virginia J. Campbell and Hugh Campbell for the purposes mentioned have hereunto set their hands and seals this the eighth day of June, A. D. eighteen hundred and eighty-one."

"This indenture made the ninth (9th) day of April in the year of our Lord one thousand eight hundred and eighty-one between W. W. Mills and J. P. Hague, of the county of El Paso and state of Texas, parties of the first part, and the Galveston, Harrisburg & San Antonio Railway Company, a corporation duly incorporated under the laws of the state of Texas, party of the second part, witnesseth: Said parties of the first part for and in consideration of the sum of one dollar lawful money of the United States of America to them in hand paid by said parties of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the party of the second part, and to its heirs and assigns forever all those certain lots, pieces or parcels of land situate, lying and being in the city of El Paso, county of El Paso and state of Texas, bounded and particularly described as follows, to wit: Land situated in the city and county of El Paso, state of Texas, and located between the southerly line of Franklin street and the northerly line of Saint Louis street, said line being produced northeasterly conforming to the directions as shown on the map of the city of El Paso as surveyed and drawn by Anson Mills

and lying east of a line parallel to the east line of Kansas street, and situated three hundred and thirty (330) feet therefrom, measured along the center line of Main street produced northeasterly and in conformity with the direction of Main street as shown on said map of Anson Mills, and more particularly described as follows: Beginning at a point situated north 53 degrees east and distant seventy (70) feet from the northeasterly corner of block number forty-three (43) of Anson Mills survey and map of El Paso; thence extending north 53 degrees east fifteen hundred and eighty (1580) feet; thence south 37 degrees east five hundred and ninety (590) feet; thence south 53 degrees west fifteen hundred and eighty (1580) feet; thence north 37 degrees west five hundred and ninety (590) feet to the place of beginning and containing an area of twenty-one and four tenths (21.4) acres of land, more or less; the said tracts or parcels of land to be used for depot grounds and railway purposes, by said company on conditions set forth in deed of Thomas T. Gantt and David Rankin of Saint Louis, Missouri, trustees of the estate of Robert Campbell, to Charles Crocker, dated January 25th, A. D. 1881, except that the freight and passenger depots therein named may be located three hundred and thirty (330) feet further northeastwardly from the center line of Kansas street. And in case the said parcels of land are not used by said railway company for passenger and freight depots and railway purposes, then in that case all the right, title and interest therein conveyed shall revert to and again be vested in the said parties of the first part; and if said railway company abandon the use of said land for said purposes, all buildings and fixtures erected thereon by said company shall be held part and parcel of said land and shall revert with the same to the said parties of the first part. Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, property, possession, claim and demand whatsoever as well in law as in equity of the said parties of the first part of, in or to the above described premises and every part and parcel thereof with the appurtenances. To have and to hold all and singular the above mentioned and described premises, together with the appurtenances unto the said party of the second part, its heirs and assigns forever for the purposes and on the conditions above set forth.

"In witness whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written."

As I view this case the primary rule to govern us in the construction of the writings before us is that the deeds themselves must alone be looked to, for parol evidence is not admissible. G., H. & S. A. Ry. Co. v. Pfeuffer, 56 Tex. 70; East Line Ry. Co. v. Garrett, 52 Tex. 133.

Article 1106, Rev. Civ. Stat. Tex. 1911:

"Every estate in lands which shall hereafter be granted, conveyed or devised to one, although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

This statute in effect abolishes the iron-clad rules of construction of deeds under the old common law by reason of form or particular words used, and, construed in the light of the decisions of our Supreme Court,

means that the intention of the party making the deed must be arrived at by giving effect to every part of the instrument if it can be done. If that cannot be done, and it is found that the deed contains inherent conflict of intentions, then the main intention, the object of the grant being considered, shall prevail.

The parts of the deed which expressly indicate the object of the grant or interest which the railroad company is intended to take is plain, and the rule that courts will confer the greatest estate on the grantee that the terms of the grant will permit must necessarily be subordinated to the rule that every part of the deed should be harmonized and given effect to if it can be done, with a view, always, of determining the intent of the parties, if possible. "Said real estate shall be used exclusively for railroad depot grounds and railroad business purposes," and, that there might be no mistake about the intention of the grantors, they add, "and that if said premises shall cease wholly to be used for the said purposes they shall revert to the grantors or their successors." In addition to the above the nominal consideration, the size, the relative position and shape of the land described all point out the class of estate intended to be conveyed.

The wording of the deed quoted above conveys to the mind only one meaning, viz., that the land conveyed is conveyed for a use for railroad purposes, the very nature of right ordinarily held by railway companies for the purposes for which they were by law created —an easement. Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S. W. 453; Reichenbach v. Washington Short Line, 10 Wash. 357, 38 Pac. 1126; Olive Stermenburg & Co. v. S. & S. T. Ry. Co., 11 Tex. Civ. App. 208, 33 S. W. 139. To construe this deed as a conveyance of right of way, an easement, every word and sentence of the deed will be given effect to, and the railway company takes what is clearly indicated by every part of the deed was intended it should have, "the use of the land for railroad purposes forever, if such use was continuous."

To hold the quoted words to have been used in any other sense is to erase out of the deed whole sentences, and, those sentences being restrictions as to the use of the premises conveyed, make it obvious that the conveyance was not in fee, for in that case the grantee could use the land as it pleased until the condition happened. Harris v. Johnson, 31 N. J. Eq. 174; Carpenter v. Graber, 66 Tex. 465, 1 S. W. 178; Pugh v. Mays, 60 Tex. 191; Hancock v. Butler, 21 Tex. 804.

And if the land was not conveyed in fee, then the title of plaintiffs was never divested and the owner of the land, whoever he may be, can take advantage of the conditions. John Ruch v. City of Rock Island, 97 U. S. 693–1101, 24 L. Ed. 1101.

Where in a suit by the owner, the plain-tiffs having shown title to the land and the defendant to the easement, plaintiffs are entitled to recover judgment therefor, subject to the right of the defendant to enjoy the easement. Hays v. T. & P. Ry. Co., 62 Tex. 397; Lyon v. McDonald, 78 Tex. 75, 14 S. W. 261, 9 L. R. A. 295.

What has been said above applies with equal force to the other deeds and disposes of the thirteenth and fifteenth assignments. It follows, therefore, that the trial court erred in giving judgment for defendants upon their cross-action as complained of in the eighth, ninth, and fourteenth, fifteenth, and seventeenth assignments, especially in view of the finding of the court that the condition had not been broken. The only way that the railway company could obtain the fee-simple title to land in question would be by purchase or adverse holding after abandonment for railway purposes for sufficient length of time.

That portion of the judgment of the lower court which decrees that plaintiff have nothing should be reformed and judgment here rendered for plaintiffs and interveners for the fee-simple title to the land sued for, and that defendant take nothing by cross-action, and that defendant have its easement, etc.

### On Rehearing.

McKENZIE, J. [9] Upon more mature consideration, we are of the opinion that the deed of June 8, 1881, conveys upon limitation and not condition subsequent. The condition in the deed is as follows:

"To have and to hold, all and singular, the premises, with all the rights, privileges and appurtenances thereunto appertaining unto the said Galveston, Harrisburg & San Antonio Railway Company, and its successors and assigns, so long as the said land shall be used as a railroad right of way, and if not so used, shall revert to the grantors herein."

The following authorities support our position: Tiedemann on Real Property, § 281; 2 Washburn on Real Property, §§ 970, 971; Green v. Gresham, 21 Tex. Civ. App. 601, 53 S. W. 382; Diamond v. Rotan, 124 S. W. 196; McBride v. Farmers' & Merchants' Gin Co., 152 S. W. 1135; Stewart v. Blain, 159 S. W. 928. Mr. Tiedemann, § 281, supra, says:

"An estate upon limitation is one which is made to determine absolutely upon the happening of some future event as an estate to A., so long as she remains a widow. The technical words generally used to create a limitation are conjunctions relating to time, such as 'during,' 'while,' 'so long as,' 'until,' etc. But these words are not absolutely necessary; for where it is necessary, in order to carry out the intent of the grantor, to construe an estate to be a limitation, it will be done, even though words, ordinarily used in the creation of an estate upon condition, appear in their stead. An estate upon limitation differs from one upon condition in this: That the estate is determined ipso facto by the happening of the contingency, and does not require any entry by the grantor in order to defeat it. A conditional limitation is an estate limited to take effect upon the happening of the contingency, and which takes place of the estate which is determined by such con-

tingency. Some authors, among others Mr. Washburn, have used the terms 'conditional limitations' and 'limitations' interchangeably, referring in both instances to the estate which is determined by the happening of the event. But it appears to be the better method to apply the term 'conditional limitation' to the estate which takes effect, and 'limitation' to the estate which is determined. A conditional limitation is an estate limited to take effect after the determination of an estate, which in the absence of a limitation over would have been an estate upon condition. Strictly speaking, a conditional limitation cannot be limited after an estate upon limitation, except where the contingency which constitutes the limitation is not sure to happen and the estate is a fee upon limitation. Thus in a grant to A. during widowhood, and upon her marriage to B., A.'s estate would be an estate upon limitation, and consequently B.'s estate would be a good common-law remainder."

Mr. Washburn, discussing the same subject, section 970, supra, says:

"In this and many other respects, an estate upon condition, properly speaking, differs from what is known as a conditional limitation. In either case, the estate is a conditional one. But in the one, though the event happen upon which the estate may be defeated, it requires some act to be done, such as making an entry, in order to effect this. In the other, the happening of the event is, in itself, the limit beyond which the estate no longer exists, but is determined by the operation of the law, without requiring any act to be done by any one. In case of a condition at common law, the grantor or his heirs alone can defeat the estate by entry for condition broken. In a conditional limitation, the estate determines, ipso facto, upon the happening of the event, and goes over at once to the grantor by reverter, or to the person to whom it is limited upon the happening of such contingency. So if the breach of a condition be relieved against in chancery, or excused by becoming impossible by the act of God, the estate to which it is annexed remains unimpaired, whereas a limitation determines an estate from whatever cause it arises. This distinction may be illustrated by a familiar example. A grant to A. B., provided she continues unmarried, is an estate upon condition; and if she marries, nobody can take advantage of it to defeat the estate but the grantor or his heirs. But a grant to A. B., so long as she continues unmarried, is a limitation. The moment she marries, the time for which the estate was to be held has expired, and the estate is not technically defeated, but determined. So the grant of an estate *until* a certain event happens is a limitation, and good at the common law, and upon it a remainder may be limited, provided the first estate limited were not in terms a fee simple absolute or determinable."

And in section 971, supra, he says:

"A stranger may take advantage of a limitation, but not of a condition. The only general rule, perhaps, in determining whether words are words of condition or of limitation is that, where they circumscribe the continuance of the estate, and mark the period which is to determine it, they are words of limitation; when they render the estate liable to be defeated, in case the event expressed should arise before the determination of the estate, they are words of condition. Thus a parol letting of premises to another, so long as he keeps a good school, is a conditional limitation, and no notice or entry is necessary to determine it if the tenant fail to keep such a school. The distinction between condition and limitation is that the latter determines the estate of itself; the former, to have that effect, requires some act of election on the part of him or his heirs in whose favor the condition is created. 'A condition respects the destruction and determination of an estate; a conditional limitation relates to the commencement of a new one. A condition brings the estate back to the grantor or his heirs; a conditional limitation carries it over to a stranger.'"

From the foregoing authorities it follows that the lands described in the deed of June 8, 1881, were conveyed upon limitation, and that the subsequent vendees of the original grantors in said deed would succeed to whatever right or interest in the estate that the original grantors had after the execution of the said deed, and plaintiffs herein, being the subsequent vendees of the original grantors of the deed of June 8, 1881, as such, would be entitled to maintain suit as to recovery of the lands embraced in the deed of June 8, 1881, by virtue of any breach of the appellee of the conditions in said deed unless title to the property, independent of said deed, was not in the plaintiffs.

Notwithstanding our opinion as it relates to the deed of June 8, 1881, we are of the opinion that the judgment of the trial court as reformed upon original hearing should stand unchanged.

The findings of fact as filed by the trial court are not challenged, and are binding upon this court. Prairie Cattle Co. v. Balfour, 146 S. W. 674. From the findings of fact the trial court filed conclusions of law, the third conclusion being as follows:

"Third. I further find that the evidence having established, so far as plaintiffs are concerned, H. S. and J. S. Gillett as the common source of title through whom plaintiffs claim a six-eighths interest in the half blocks involved in this suit, which half blocks defendant also claims, plaintiffs have failed to show any interest in said half blocks, or any of same, and have failed to show that any title to any of the land whatsoever passed to them, or their grantors, by the deed signed by J. P. McKinney, purporting to be assignee in bankruptcy of Henry S. and John S. Gillett, inasmuch as his authority does not appear, and it has not been shown that H. S. and J. S. Gillett were ever adjudicated bankrupts, or that said McKinney was ever selected assignee in bankruptcy, or that any conveyance was ever made to him as such assignee."

This conclusion of law stands unchallenged, unless it is challenged by the eighteenth assignment of error. The eighteenth assignment of error is submitted as a proposition, and as such it fails to disclose any point of objection, or assign any reason for the contention that the court erred. We are of the opinion that the proposition is too general to entitle it to consideration, and the assignment of error is overruled. We are therefore of the opinion that the judgment, as reformed upon the original hearing herein, should stand, and that the appellants' motion for rehearing should be overruled.

We have given due consideration to the motion for rehearing as filed by the appellee, and are of opinion that it should also be overruled. The authorities cited in support of the contention as made in the motion are not considered as authorities in point in this cause.

In view of the opinion that the deed of June 8, 1881, conveys the lands therein described upon limitation and not upon condition subsequent, we deem it proper to permit the parties to file additional motions for rehearing, and it is ordered that 15 days be granted within which such motions may be filed.

### On Second Rehearing.

[10] We will consider the eighteenth assignment of error, which appellants submit as a proposition, as being sufficient. It is as follows:

"The court erred in not holding that by accepting the deeds aforesaid and the deed from Charles Crocker, and by entering into possession of the premises thereby conveyed, defendant was precluded from denying the original ownership of said premises by Robert Campbell, and in not holding that plaintiffs showed a sufficient title as against defendant of the original ownership of said Robert Campbell."

Substantially, the proposition is that appellee, by accepting deeds from the trustees of Robert Campbell, and by entering into possession of the premises conveyed, in order to defeat the conditions of the deeds, is estopped from asserting any superior, outstanding title. As noted in the original opinion, the deed of June 8, 1881, conveys the land to appellee, its successors and assigns, "so long as the said land shall be used as a railroad right of way, and if not so used, shall revert to the grantors." It will be noted that the condition requires the continuous use of the premises as a railroad right of way, and upon failure to so use the premises, reverts to the grantor. As noted in the original opinion on rehearing, the condition is construed as one of limitation. In Robertson v. Pickrell, 109 U. S. 608, 3 Sup. Ct. 407, 27 L. Ed. 1049, the Supreme Court of the United States, speaking through Mr. Justice Field, of the relation of grantor and grantee, approved the general rule to be as follows:

"The vendee acquired the property for himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of his title, unless he should be called upon in consequence of some covenant or warranty in his deed. The property having become by the sale the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises. No principle of morality restrains him from doing this, nor is either the letter or the spirit of the contract violated by it. [Blight's Lessee v. Rochester] 7 Wheat. 547, 548. See, also, Willison v. Watkins, 3 Pet. 43 [7 L. Ed. 596]; Watkins v. Holman, 16 Pet. 25 [10 L. Ed. 873], and Taylor, Land. & T. § 14."

After stating the rule, the court then adds:

"To this general statement of the law there is this qualification: That a grantee cannot dispute his grantor's title at the time of conveyance so as to avoid payment of the purchase price of the property; nor can the grantee in a contest with another, whilst relying solely upon the title conveyed to him, question its validity when set up by the latter. In other words, he cannot assert that the title, obtained from his grantor or through him, is sufficient for his protection and not available to his contestant. Where both parties assert title from a common grantor, and no other source, neither can deny that such grantor had a valid title when he executed his conveyance. Ives v. Sawyer, 20 N. C. 179, and Gilliam v. Bird, 30 N. C. 280 [49 Am. Dec. 379]. The case of Board v. Board, to which counsel refer, was decided upon similar grounds; there the defendant in ejectment, claiming as grantee under the devisee of a life estate under a will, was held to be estopped from denying the validity of the will in an action by the grantees of the remainderman. L. R. 9 Q. B., 48.

"With exceptions or limitations of this character it will be found on examination of the authorities, particularly those of a modern date, that the doctrine of estoppel in pais, however it may have been applied formerly, cannot now be asserted to preclude the grantee from denying his grantor's title and acquiring a superior one, unless there exists such a relation of the parties to each other as would render the proceeding a breach of good faith and common honesty. No such relation exists between grantor and grantee in an absolute conveyance without recital or covenant, whether it be of the fee or of an estate for life. The grantee does not recognize by the acceptance of such a conveyance of an estate for the life of another, the possession of any greater estate in the grantor, or any obligation to hold the premises for him after the termination of the estate. So far as he is informed by such a conveyance he takes the entire interest of the grantor in the property. He does him, therefore, no wrong by purchasing any adverse claims which may strengthen his own title, which may give him a title after the termination of the life estate. Covenants in the instrument intended for him, such as to restore and surrender the premises on the termination of the life estate, or recitals declaring the reversion to be in the grantors or others, would, of course, change the relations of the parties. Obligations from such covenants or recitals might arise which would control the action of the grantee."

Also, in Cowell v. Colorado Springs Co., 100 U. S. 61, 25 L. Ed. 547, the defendant, who was holding under a deed with condition subsequent, was sued by the grantor for recovery of the premises upon a breach of the conditions, as stipulated in the defendant's deed. One of the defenses relied upon was that the grantor was without title at the time when conveyance was made. Mr. Justice Field, who also delivered the opinion of the court, said:

"The defendant, as already stated, went into possession of the premises in controversy under the deed of the plaintiff. He took his title from the company, with a condition that if he manufactured or sold intoxicating liquors, to be used as a beverage, at any place of public resort on the premises, the title should revert to his grantor; and he is therefore estopped, when sued by the grantor for the premises, upon breach of the condition, from denying the corporate existence of the plaintiff, or the validity of the title conveyed by its deed. Upon obvious principles, he cannot be permitted to retain the property which he received upon condition that it should be restored to his grantor on a certain contingency, by denying, when the contingency has happened, that his grantor ever had any right to it."

We are of opinion that the deed of June 8, 1881, is such an instrument as would be controlled by the principles as announced in the case last cited, and that the grantee would

not be permitted to urge as a defense as against the grantor for the recovery of the premises upon a breach of the conditions in the deed, by setting up as against said grantor an outstanding title which the grantee acquired whilst in possession of the premises under a deed of the grantor. We think the following authorities support this view: Devlin on Real Estate (2d Ed.) pars. 1279, 1289; Railway Company v. Quigley, 10 Idaho, 770, 80 Pac. 401; Jacobs v. Miller, 50 Mich. 119, 15 N. W. 42; Waco Bridge Co. v. City of Waco, 85 Tex. 320, 20 S. W. 137; American, etc., v. Mercedes, etc. (Tex. Civ. App.) 155 S. W. 286; Hardy v. De Leon, 5 Tex. 211; Macklot v. Dubreuil, 9 Mo. 477, 43 Am. Dec. 550, 553; Doty v. Barnard, 92 Tex. 104, 47 S. W. 712. The principle as announced in the case of Cowell v. Colorado Springs Co., supra, is the same which governs between the vendor and vendee where the vendor sues to recover of the vendee the purchase money for the lands conveyed by warranty deed. It is said in King v. Sullivan, 92 S. W. 51, that:

"No principle is better settled in this state than that an outstanding title, purchased by vendee in possession of land under a warranty deed, inures to the benefit of his vendor, and in a suit by the vendee against the vendor for breach of warranty he is limited in his recovery to the cost and expense incurred in procuring the outstanding title. McClelland v. Moore, 43 Tex. 355; Denson v. Love, 58 Tex. 468; Clark v. Mumford, 62 Tex. 531; Johnson v. Blum, 28 Tex. Civ. App. 10, 66 S. W. 461; Sedg. Damages, § 979."

Additional authorities to the same effect are as follows: McGregor v. Tabor, 26 S. W. 443; Cook v. Coleman Co., 33 S. W. 756.

The outstanding title, which was acquired by appellee soon after it took possession of the conveyed premises, therefore inured to the benefit of appellee's grantors, perfecting the title which was conveyed to it. An outstanding title which has been purchased by the grantee during his possession of the premises under a deed from the grantor may be a good and valid defense as an offset against the purchase-money notes for an amount equal to the amount which the grantee was required to pay for the outstanding title. This, however, is a defense only when properly pleaded, and the evidence will justify such an offset. It also appears from the authorities cited that the grantee's possession may ripen by limitation into a valid title as against an outstanding title; such title so acquired by the grantee by limitation would, in that event, inure to the benefit of the grantor, and so long as the covenant in the deed which would require in equity such a relation as between the parties as to render the purchase of an outstanding title as against the grantor's title a breach of good faith and common honesty, such outstanding title so acquired, whether by limitation or by purchase, would inure to the benefit of the grantor.

In the instant case, the grantee proved a superior, outstanding title from Henry S. and John S. Gillett, connecting itself with such title to blocks 9, 42, and 43. As to block 8, the proof shows that the title to it remained in Williams and Pierson. Under the authorities just cited, the acquisition of the superior, outstanding title to the half blocks 9, 42, and 43, inured to the benefit of the vendor. It also appears that as to blocks 3, 8, and 10, by virtue of the continuous and adverse possession, the appellee acquired title to it by limitation, which also inured to the benefit of the grantor. The appellee went into possession under the deed of June 8, 1881, and accordingly is bound by said deed; and for the reasons just given appellee will not be permitted to dispute the title which it acquired to the half blocks by setting up any outstanding title to same. The trial court has found that the appellee has not violated any of the conditions of the deed, having performed same continuously since it purchased said property from Gantt & Rankin, as trustees of Robert Campbell. This being true, appellants should not be permitted to recover of the appellee the half blocks in question, but, on the other hand, appellee, by virtue of the conveyance to it, by deed of June 8, 1881, did acquire the whole of said property, subject to the conditions in said deed, which conditions require continuous performance, and upon a breach of which conditions, the appellants would be entitled to the property, and to this extent, the judgment as heretofore rendered in this cause should be further modified so as to meet the views as herein expressed.