## ROBERTSON and Others *v.* PICKRELL and Others.

IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued December 5th, 1883.—Decided December 17th, 1883.

*District of Columbia—Estoppel—Evidence—Judgment—Probate—Transcript of Judgment—Will.*

1. Records and judicial proceedings of each State affecting property or estate within it have in every other State the force and effect which they possess in the State of their origin : but as to similar property or estate situated in another State, they have no greater or other force than similar records or proceedings in the courts of that State.
2. The probate of a will in one State does not establish the validity of the will as a will devising real estate in another State, unless the laws of the latter State permit it. The validity of the will for that purpose must be determined by the laws of the State in which the property is situated.
3. A transcript of the record of a probate of a will in Virginia, sufficient to pass real estate there, is not proof of the validity of the will in the District of Columbia for the purpose of passing real estate there.
4. In order to pass real estate situated in the District of Columbia, a will must be executed as provided by the laws in force there, and its validity must be established in the manner provided by those laws.
5. Probate of a will in the District of Columbia is evidence of its validity only so far as it affects personal property. As a will devising real estate the instrument itself must be produced, with the evidence of the subscribing witnesses, or if they be dead, or their evidence legally unattainable, with proof of their handwriting.
6. The plaintiffs claimed as heirs of R. They showed a deed by R to S of an estate in the premises for the life of M, but without covenants by S to surrender to R or his heirs, or as to any further interest in R. They also showed that the life estate of S passed by mesne conveyances to the defendants : *Held,* that the defendants were not estopped from setting up an adverse superior title.

Suit to recover possession of a tract of land in the city of Washington.

*Mr. J. G. Bigelow* for the plaintiffs in error.
*Mr. Samuel B. Paul* for the defendants in error.

Mr. Justice Field delivered the opinion of the court.

This was an action of ejectment for a parcel of land in the city of Washington, District of Columbia. On the trial the

plaintiffs gave in evidence a conveyance of the premises from the United States to one Robert Moore, executed in June, 1800 ; and then endeavored to trace title from the grantee through a devise in his last will and testament, bearing date in July, 1803. For this purpose they produced and offered a transcript of proceedings in the Hustings Court of Petersburg, in the State of Virginia, containing a copy of the will and of its probate in that court in December, 1804.

By the law of Virginia then in force, that court was authorized to take the probate of wills, as well of real as of personal estate ; and when a will was exhibited to be proved, it could proceed immediately to receive proofs, and to grant a certificate of its probate. Within seven years afterwards its validity was open to contestation in chancery by any person interested ; but, if not contested within that period, the probate was to be deemed conclusive, except as to parties laboring at the time under certain disabilities, who were to have a like period to contest its validity after the removal of their disabilities.

The transcript was offered not merely as an exemplified copy of the record of the last will and testament of Robert Moore, and of its probate in the Hustings court, but also as conclusive proof of the validity of the will, and of all matters involved in its probate. Upon objection of the defendants' counsel, it was excluded, and an exception was taken to the exclusion. The ruling of the court constitutes the principal error assigned for a reversal of the judgment.

We think the ruling was correct. Looking at the transcript presented, we find that it shows only that a paper purporting to be the last will and testament of the deceased was admitted to record upon proof that the instrument and the signature to it were in his handwriting. No witnesses to its execution were called, no proof was offered of the genuineness of the signatures of the parties whose names are attached to it as witnesses, and no notice was given to parties interested of the proceedings in the Hustings court. As a record it furnishes no proof of an instrument executed as a last will and testament in a form to pass real estate in the District of Columbia. The execution of such a will must be attested by at least three

witnesses. It matters not how effective the instrument may be to pass real property in Virginia, it must be executed in the manner prescribed by the law in force in the district to pass real property situated there, and its validity must be established in the manner required by that law. It is familiar doctrine that the law of the place governs as to the formalities necessary to the transfer of real property, whether testamentary or *inter vivos*. In most of the States in the Union a will of real property must be admitted to probate in some one of their courts before it can be received elsewhere as a conveyance of such property. But by the law of Maryland, which governs in the District of Columbia, wills, so far as real property is concerned, are not admitted to such probate. The common-law rule prevails on that subject. The Orphans' court there may, it is true, take the probate of wills, though they affect lands, provided they affect chattels also; but the probate is evidence of the validity of the will only so far as the personal property is concerned. As an instrument conveying real property the probate is not evidence of its execution. That must be shown by a production of the instrument itself and proof by the subscribing witnesses; or, if they be not living, by proof of their handwriting.

So it matters not that the same effect is to be given in the courts of this district to the record of the Hustings court, which, by the law of Virginia, can be given to it there; that is, that it is to be received as sufficient to pass the title to real property situated in that State. The question still remains— is the instrument sufficient to pass title to real property in the District of Columbia? If so, it should have been produced and proved in the manner mentioned. If, as stated by counsel, it is on file in the Hustings court, and by the law of Virginia cannot be removed, then it should have been proved under a commission, as other instruments out of the State are proved, when it is impossible to compel their production in court.

The act of Congress declaring the effect to be given in any court within the United States to the records and judicial proceedings of the several States, does not require that they shall .

have any greater force and efficacy in other courts than in the courts of the States from which they are taken, but only such faith and credit as by law or usage they have there. Any other rule would be repugnant to all principle, and, as we said on a former occasion, would contravene the policy of the provisions of the Constitution and laws of the United States on that subject. *Board of Public Works* v. *Columbia College*, 17 Wall. 521, 529.

It does not appear that the validity of the will of Moore, as probated in 1804 in the Hustings Court of Petersburg, was ever afterwards contested in a court of chancery in Virginia. Its probate must, therefore, be deemed conclusive, so far as that State is concerned, and the will held sufficient to pass all property which can be there transferred by a valid instrument of that kind. But no greater effect can be given out of Virginia to the proceedings in the Hustings court. The probate establishes nothing beyond the validity of the will there. It does not take the place of provisions necessary to its validity as a will of real property in other States, if they are wanting. Its validity as such will, in other States, depends on its execution in conformity with their laws; and if probate there be also required, such probate must be had before it can be received as evidence.

Authority for these views is found in the cases of *McCormack* v. *Sullivant*, 10 Wheat. 192, and of *Darby* v. *Mayer*, 10 Wheat. 465. In the first of them it appeared that by the law of Ohio, before a will devising real property can be considered as valid, it must be presented to the court of common pleas of the county where the land lies, for probate, and be proved by at least two of the subscribing witnesses, unless it has been proved and recorded in another State according to its laws; in which case an authenticated copy can be offered for probate without proof by the witnesses. A will devising real property in that State was admitted to probate in the State of Pennsylvania, and this court held that such probate gave no validity to the will in respect to the real property in Ohio, as to which the deceased was to be considered as having died intestate. *McCormack* v. *Sullivant*, 10 Wheat. at 202, 203. In the second case, which was an action of ejectment for land in Tennes-

see, the defendant endeavored to trace title to the premises through the will of one Kitts. For that purpose a copy and probate of the will devising the property were produced in evidence, certified from the Orphans' Court of Baltimore County, Maryland, and admitted against the objection of the plaintiff. This court held the record inadmissible, and in its opinion explained the common-law doctrine as to what was legal evidence in an action of ejectment to establish a devise of real property. It stated that the ordinary's probate was no evidence of the execution of the will in ejectment; that where the will itself was in existence and could be produced, it was necessary to produce it; and that when the will was lost or could not be produced, secondary evidence was necessarily resorted to; but that, whatever the proof, it was required to be made before the court which tried the cause, the proof before the ordinary being *ex parte*, the heir at law having no opportunity to cross-examine the witnesses, and the same solemnities not being required to admit the will to probate, which are indispensable to give it validity as a devise of real property. And the court added that the law of Maryland, with regard to the evidence of a devise in ejectment, was the common law of England, and had been so recognized in decisions of the courts of that State. *Darby* v. *Mayer*, 10 Wheat. at 468, 469.

The first of these cases shows that the probate of a will of real property in one State is of no force in establishing the validity of the will in another State. That must be determined by the laws of the State where the property is situated. The second case shows that the proof of a devise of land in ejectment in Maryland—and its law obtains in this district—must be made by the production of the will in court, and evidence of its execution by the subscribing-witnesses; or, if the will be lost, or cannot be produced, the proof must be made by secondary evidence of its execution and contents.

The plaintiffs contend that they can use the record of the Hustings court in Virginia as proof of the genuineness of the instrument, and then supplement that proof by parol evidence that the original was executed by three witnesses, and thus establish it as a will sufficient to pass real estate in the District

of Columbia. But in this contention they overlook a material circumstance. It is not sufficient to give effect to an instrument as a will of real property that its genuineness merely be established. Its genuineness must be shown by the witnesses, if they are living, who attested its execution and heard the declaration of the testator as to its character and, if dead, their handwriting must be proved, as already stated. No other proof will answer; certainly not the probate of the will on *ex parte* testimony by a tribunal of another State or country.

When the record of the will and probate were excluded, the plaintiffs offered parol evidence to show that the copy of the will in the record was a true copy of the original now on file in the Hustings court. Upon objection the evidence was excluded, and we think properly so. The proof of such copy would not have established the validity of the original instrument as a will to pass real property in the District of Columbia. The law of Maryland of 1785, upon which the plaintiff relies, assuming that it is still in force, which may be doubted, was not designed to change the formalities required by the local law for the validity of wills of real property executed in other States; but to give to authenticated copies of such instruments, when recorded or filed with the register there, the same force and efficacy which would attend the originals if produced.

Failing to secure the introduction of the record of the Hustings court and the parol evidence mentioned, the plaintiffs insisted that the defendants were estopped from asserting an adverse title against them. To support their position they introduced a deed by one Robertson and his wife Maria, executed in 1839 to one Samuel Redfern, conveying the premises for the life of the said Maria, and then showed conveyances in fee of the property from Redfern to one Fraser, and from Fraser to one John Pickrell, then a devise of the property by him to Anna Pickrell, and by her to the defendants; and that the plaintiffs are heirs of Robertson and wife, who are dead, Maria having died in 1873; and they contended that the conveyance by Robertson and wife of a life estate to the grantor of parties through whom the defendants trace their interest, precluded

them from asserting any title against the right of the plaintiffs
to the reversion as heirs of Robertson and wife. This position
was assumed upon the notion that a party who receives a deed
of a life estate, and all persons taking a subsequent conveyance
in fee from him or his grantees, or deriving title by devise from
such grantees, are estopped to deny that the reversion upon the
termination of the life estate is vested in the grantor or his
heirs.

There was here, of course, no estoppel *by deed* against Red-
fern, the grantee of the life estate, for he did not join in the
execution of the instrument, nor is his seal annexed to it. If
any estoppel was created against his acquisition of the rever-
sion from other parties than his grantors or persons claiming
under them, it was one *in pais;* and that can arise as between
grantor and grantee only where from the relation of the parties
there is implied in the acceptance of possession under the deed
an obligation to restore the possession on the happening of cer-
tain events, or to hold the property for the grantor's benefit or
persons designated by him, such as exists from the relation of
landlord and tenant, of mortgagor and mortgagee, or the
creator of a trust and trustee. *Gardner* v. *Greene*, 5 R. I. 164.

The doctrine that a lessee entering into possession under a
lease is estopped, whilst retaining possession, to deny his land-
lord's title is familiar. That arises from the nature of the con-
tract of lease, which is for the possession and use, for a pre-
scribed period, of the lessor's property, upon considerations to
him by way of rent or otherwise. It implies an obligation to
surrender the premises to the lessor on the termination of the
lease, that is at the expiration of the time during which the
owner has stipulated that the lessee may have the use and pos-
session of his property. As said by this court in *Blight's Lessee*
v. *Rochester*, 7 Wheat. 535, "the title of the lessee is in fact
the title of the lessor. He comes in by virtue of it, holds by
virtue of it, and rests upon it to maintain and justify his posi-
tion. He professes to have no independent right in himself,
and it is a part of the very essence of the contract under which
he claims that the paramount ownership of the lessor shall be
acknowledged during the continuance of the lease, and that

possession shall be surrendered at its expiration. He cannot be allowed to controvert the title of the lessor without disparaging his own, and he cannot set up the title of another without violating that contract by which he obtained and holds possession, and breaking that faith which he has pledged, and the obligation of which is still continuing and in full operation," page 547. And, in speaking in the same case of the relation between vendee and vendor, the court added:

"The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of his title, unless he should be called upon in consequence of some covenant or warranty in his deed. The property having become by the sale the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises. No principle of morality restrains him from doing this, nor is either the letter or the spirit of the contract violated by it," page 548.

See also *Wilson* v. *Watkins*, 3 Pet. 43; *Watkins* v. *Holman*, 16 Pet. 54, and Taylor on Landlord and Tenant, sec. 14.

To this general statement of the law there is this qualification, that a grantee cannot dispute his grantor's title at the time of conveyance so as to avoid payment of the purchase price of the property; nor can the grantee in a contest with another, whilst relying solely upon the title conveyed to him, question its validity when set up by the latter. In other words, he cannot assert that the title obtained from his grantor, or through him, is sufficient for his protection, and not available to his contestant. Where both parties assert title from a common grantor, and no other source, neither can deny that such grantor had a valid title when he executed his conveyance. *Ives* v. *Sawyer*, 4 Dev. & Bat. Law, 51, and *Gilliam* v. *Bird*, 8 Iredell Law, 280. The case of *Board* v. *Board*, to which counsel refer, was decided upon similar grounds. There the defendant in ejectment, claiming as grantee under the devisee

of a life estate under a will, was held to be estopped from denying the validity of the will in an action by the grantees of the remainderman. Law Rep. 9 Queen's Bench, 48.

With exceptions or limitations of this character it will be found on examination of the authorities, particularly those of a modern date, that the doctrine of estoppel *in pais*, however it may have been applied formerly, cannot now be asserted to preclude the grantee from denying his grantor's title and acquiring a superior one, unless there exists such a relation of the parties to each other as would render the proceeding a breach of good faith and common honesty. No such relation exists between grantor and grantee in an absolute conveyance without recital or covenant, whether it be of the fee or of an estate for life. The grantee does not recognize by the acceptance of such a conveyance of an estate for the life of another, the possession of any greater estate in the grantor, or any obligation to hold the premises for him after the termination of the estate. So far as he is informed by such a conveyance he takes the entire interest of the grantor in the property. He does him, therefore, no wrong by purchasing any adverse claims which may strengthen his own title, or which may give him a title after the termination of the life estate. Covenants in the instrument intended for him, such as to restore and surrender the premises on the termination of the life estate, or recitals declaring the reversion to be in the grantor or others, would of course change the relations of the parties. Obligations from such covenants or recitals might arise which would control the action of the grantee. *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35. Here, as already stated, there is nothing of the kind. The conveyance is for the life of Maria and no longer, and without covenants or recitals as to any further interest of the grantors or of others. By taking a deed poll of this character no obligation to the grantors could arise, and, consequently, no estoppel precluding the grantee, and those claiming under him, from accepting conveyances from other sources to strengthen their existing interests or to acquire the reversion, and thus securing to themselves the absolute fee. In *Osterhout* v. *Shoemaker*, 3 Hill, 513, the Supreme Court of New York held a similar doctrine

as to the relation between grantor and grantee in fee. Speaking by Judge Bronson it said :

"There is no estoppel where the occupant is not under an obligation, express or implied, that he will at some time, or in some event, surrender the possession. The grantee in fee is under no such obligation. He does not receive the possession under any contract, express or implied, that he will ever give it up. He takes the land to hold for himself, and to dispose of it at pleasure. He owes no faith or allegiance to the grantor, and he does him no wrong when he treats him as an utter stranger to the title."

This language was subsequently cited with approval by the court of appeals of the State in the case of *Sparrow* v. *Kingman*, 1 N. Y. 242, and there is no reason why it should not apply with equal force to a grantee of an estate for life as to a grantee in fee. There is nothing in the nature of the estate which necessarily implies that the grantor is the owner of the reversion. The absence in the deed here of any reference to a reversionary interest would rather seem to negative such ownership. Be that as it may, there was no implied obligation from any relation of the parties to each other which could estop the grantee of the life estate, or persons claiming under him, from denying the title of his grantors to any greater estate than the one conveyed, or from acquiring title to the reversion from other sources.

We have considered in this opinion that Redfern took possession of the premises in controversy under the deed to him of the life estate, because on the argument that fact was assumed as established ; but there is no direct evidence on the point in the record.

*Judgment affirmed.*