## HARDGROVE et al. v. DE TRAY.
### No. 8510.

Court of Civil Appeals of Texas. San Antonio.
Dec. 17, 1930.

Rehearing Denied Jan. 14, 1931.

Cunningham, Moursund & Johnson, of San Antonio, for appellants.

Hull & Oliver, of San Antonio, for appellee.

SMITH, J.

This is a contest over the probate of the purported holographic will of Dennis W. McKenna, a resident of Fon du Lac, Wis., where he died on June 11, 1929, at the age of 77 years.

Some months after the death of the testator, Dennis F. De Tray, unrelated to the testator but named as a beneficiary in the alleged will, filed application in the county court of Bexar county, Tex., for the probate of the instrument as a will, upon the sole jurisdictional ground that at the time of the testator's death he "resided and had his domicile in Bexar County." This application was contested by Minnie V. Hardgrove (joined by her husband) and Nora E. McGauley, daughters of the testator's deceased brother. Upon a hearing the county court ordered the probate of the instrument as the last will and testament of the decedent, and the contestants appealed to the district court.

During the hearing on appeal in the district court, the proponent filed a trial amendment in which he set up, as an alternative ground of jurisdiction, that at the time of his death the testator's principal estate was situated in Bexar county. In settling the matter of jurisdiction the trial court found against proponent's averment that the testator was domiciled in Texas at the time of his death, and in favor of proponents' averment that the testator's principal estate was situated in Bexar county. Upon the latter finding the district court admitted the will to probate, and from that order the contestants have appealed to this court.

The alleged will was executed, as stated, in the state of California. By its terms the testator disposed of certain specifically described real property situated in the states of California, Illinois, and Wisconsin. It did not purport to dispose of any property or estate situated in the state of Texas. It did not purport to dispose of any personal or mixed property. It did not contain any residuary clause or otherwise purport to operate upon any estate, real, personal, or mixed, other than the real property specifically described as situated within the three states of California, Illinois, and Wisconsin. It further appears from the record, and is in effect conceded by appellees, that the instrument in question was not such a will as entitled it to probate under the laws of either of those three states.

The instrument bore no intelligible date. It was produced for probate by May F. De Tray, one of the designated beneficiaries, without explanation of how it first came into her possession. Other peculiarities of the instrument are thus described in appellants' brief:

"The alleged will was written on both sides of each of two sheets of letter-size paper.

The first page and the first twelve lines and part of the thirteenth line on the second page was written with pen and ink, the balance is in pencil. There is some margin at the top of the first page of the first sheet. There is no margin left either at the top or bottom of the second page of that sheet or either page of the second sheet nor is there any margin on the side to permit of binding."

These peculiarities—when considered in connection with the omission of a date from the instrument, the omission of provisions disposing of decedent's personal property, the omission of a residuary clause disposing of other real property than that specifically devised—are sufficient to raise grave doubts of the purpose of the testator to constitute the instrument the final expression of his testamentary intentions. It does not seem necessary, however, to here pass upon the trial court's finding that the instrument was in fact executed with testamentary intent. ·

By cross-assignments appellee challenges the finding of the trial court that the testator did not reside or have his domicile in Bexar county at the time of his death. We overrule this contention. The evidence was overwhelming that the testator was domiciled in the city of Fon ·du Lac, in the state of Wisconsin, at the time of his death, and the trial court correctly so found.

■ The outstanding proposition presented by appellants is that the courts of Texas have no ·jurisdiction to admit the so-called will to probate, in the face of the clear showing that the decedent was not domiciled in this state and had no property therein upon which the will could operate. We have reached the firm conclusion that the proposition is sound, and must be sustained.

The venue of proceedings to probate wills is fixed in this state by Article 3293, R. S. 1925, as follows:

"1. In the county where the deceased resided, if he had a domicile or fixed place of residence in the State.

"2. If the deceased had no domicile ·or fixed place of residence in the State, but died in the State, then either in the county where his principal property was at the time of his death, or in the county where he died.

"3. If he had no domicile or fixed place of residence in the State, and died without the limits of the State, then in any county in this State where his nearest of kin may reside.

"4. But if he has no kindred in this State, then in the county where his principal estate was situated at the time of his death."

Venue of this proceeding could not be laid in Bexar county, nor in any county in Texas, under subdivision 1 of that article, because the decedent did not reside or have his domicile in this state; nor under subdivision 2, because the decedent, a nonresident, did not die in this state; nor under subdivision 3, because the decedent, a nonresident, had no kin in this state.

■ Appellee's claim of venue in Bexar county is therefore relegated to the provisions of subdivision 4 of said article, that venue may be laid where the testator's "principal estate was situated at the time of his death." While it is not so expressed affirmatively, it is obvious upon any rational consideration that the "estate" mentioned in that clause means any estate upon which the will is designed to operate, and can have no reference to any estate clearly and definitely excluded from such operation, as is the case here.

■■ The object of the probate of wills in this or any other jurisdiction is to enable the courts, through executors, to administer the devised estates in accordance with the intentions of testators as expressed in their wills. It would seem to be a proceeding in rem, and the jurisdiction of the court assuming to act must be founded upon its possession or control of the res, in order to determine its legal status. Tested by that rule, what could be the object of this proceeding? Not one whit of the estate devised by the proffered instrument is situated in this forum; there is nothing in this state upon which that instrument, if probated as a will, could possibly operate. No executor was nominated in the instrument, and if there had been, or if one were to be appointed by the probate court, he would be utterly without power to function as such, since the whole estate devised lies in foreign states, and his letters, with the purported will annexed, would be but as a blank sheet of paper. To probate the instrument as a will, to appoint an executor or administrator with the will annexed, in this state, would be a vain and futile thing. It would be worse; it would be repugnant to every principle of comity between the states, and a palpable fraud, not only upon the jurisdiction of the probate courts of those states in which the devised property is situated, but upon the heirs of the decedent as well.

■ In short, by this proceeding in a Texas court certain residents of the state of Illinois invoke the laws of Texas to give the qualities of a valid will of a resident of Wisconsin to an instrument which can affect no property or person in this state, for the bald purpose of enabling its proponents to enforce it as a valid will in the states of California,· Illinois, and Wisconsin, in which the devised property is situated exclusively, and under whose laws it is an absolute nullity.

■ Our statutes do not purport to deal expressly or specifically with situations such as that presented in this case, and it would therefore seem that questions arising from such situations should be resolved by the ap-

plication of accepted general principles, in consonance with established rules of justice, equity, and propriety, and with particular regard to the comity which exists and should be observed between sister states. Guided by these principles, the case comes clearly and irresistibly under the universally applied common-law rule that jurisdiction over the original probate of wills devising real property rests in the courts of the states in which such property is situated, and that jurisdiction includes the power to determine the sufficiency of the forms and solemnities to give the will a proper validity.

A profound authority upon the subject of wills lays down the common-law rule, applicable here, in this language:

"It is scarcely necessary to state, that in regard to real property, the mode of execution, the construction, and the validity of a will must be governed, exclusively, by the lex rei sitae. The descent of real estate, as well as the devise of it, are governed exclusively by the law of the place where the property is situated. It would not comport with the dignity, the independence, or the security of any independent state or nation, that these incidents should be liable to be affected, in any manner, by the legislation, or the decisions of the courts, of any state or nation besides itself. This has been a universally recognized rule of the English law from the earliest time, and is so unquestionable, that we should scarcely feel justified/in occupying much space in reviewing the cases." Redfield Law of Wills, 397.

This statement of the common-law rule is supported by all the authorities coming to our notice in this investigation, and is not questioned by appellee. 40 Cyc. 1074; 2 Page on Wills (2d Ed.) 2398 et seq., § 1427; Cassody on Wills, 29, § 85; Borland's Wills and Administration, § 64; Story's Conflict of Laws (8th Ed.) 651, § 474; Greenleaf, Ev. 597, § 670; McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300; Robertson v. Pickrell, 109 U. S. 608, 3 S. Ct. 407, 27 L. Ed. 1049; Holman v. Hopkins, 27 Tex. 38; Mills v. Herndon, 60 Tex. 353; Storage Co. v. Winsor, 148 Ind. 682, 48 N. E. 592; Rutledge v. Wiggington, 166 Ky. 421, 179 S. W. 389; Robertson v. Robertson, 144 Ark. 556, 223 S. W. 32. It was said by Chief Justice Wheeler in Holman v. Hopkins, supra, that:

"In respect to the real property of the testator, the place where the property is situated is to govern not only as to the capacity of the testator, and the extent of his power to dispose of the property, but as to the forms and solemnities to give the will its due attestation and effect. (Story's Con. L., sec. 474; 1 Jarman on Wills, 1.) 'And hence,' says Mr. Jarman, 'the place where the will of immov-

able property happens to be made, and the language in which it is written, are wholly unimportant as affecting both its construction and the ceremonial of its execution; the locality of the devised property is alone to be considered.'"

We therefore hold that the probate court of Bexar county is without jurisdiction of this proceeding. It is accordingly ordered that the judgment of the district court be reversed, and the cause remanded to that court with directions to order the dismissal of the application for probate and certify such order to the county court for observance. All costs in all courts will be taxed against appellee.

Reversed and remanded, with instructions.