******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES GOODWIN *v.* COLCHESTER
PROBATE COURT ET AL.
(AC 36214)

Lavine, Beach and Norcott, Js.

*Argued October 22, 2015—officially released January 19, 2016*

(Appeal from Superior Court, judicial district of New London, Hon. Joseph Q. Koletsky, judge trial referee.)

*Eric H. Rothauser*, with whom, on the brief, was *Lee B. Ross*, for the appellant (defendant John Fedus).

*Kerin M. Woods*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. This probate appeal concerns a challenge to the ancillary administration of a holographic will executed by Rose F. Fedus (decedent) on December 21, 2000, in Philadelphia, Pennsylvania. On appeal, the defendant John Fedus[1] claims that the Superior Court, sitting as a court of probate, improperly sustained the appeal of the plaintiff, James K. Goodwin, from a decree of the Court of Probate for the district of Colchester by finding that there was "no sufficient objection" to the will pursuant to General Statutes § 45a-288.[2] We affirm the judgment of the trial court.

There is no dispute as to the following facts and procedural history. For forty years, until her death on June 1, 2006, the decedent and her sister Mae C. Fedus (Mae Fedus) lived together in a house on Rutland Street in Philadelphia (house). The plaintiff, James K. Goodwin, is the only child of Mae Fedus. At the time of her death, the decedent had the following known heirs at law: Mae Fedus; her brother Stephen Fedus, Jr. (Stephen Fedus), her sister Alyce Daggett, and her nephew, John Fedus, the defendant on appeal in this court.[3] The decedent and her heirs at law were the co-owners in equal shares of 130 acres of land (farm) in the town of Colchester.

On or about October 8, 2008, the plaintiff filed a petition for probate and grant of letters with the Register for Probate of Wills (register of wills) for the county of Philadelphia, seeking to probate a handwritten document entitled "Last Will and Testament" (will).[4] Although the decedent had signed the will, her signature had not been witnessed.[5] The will bears the handwriting of more than one person, including that of the plaintiff. The two initials "F." that appear in the first and second lines of the will, as well as the words "and Mae Fedus" on the last line, were written in a different color of ink and in a different hand from that of the remaining text. See footnote 5 of this opinion. The decedent's signature was in a handwriting different from the handwriting of the text. To the knowledge of the parties, the decedent had not executed another document purporting to be a will, and she had not created an inter vivos trust.

The plaintiff gave notice of the Pennsylvania petition to probate to Stephen Fedus, Alyce Daggett, and the defendant (collectively, Connecticut relatives). On October 8, 2008, the register of wills issued a notice granting Letters of Administration–CTA in the Estate of Rose Fedus to the plaintiff. The Connecticut relatives objected to the admission of the will to probate in Pennsylvania, but prior to trial in the Court of Common Pleas, Orphans' Court Division (Orphans' Court), they withdrew their challenge to the admission of the will to probate. On May 24, 2010, the Orphans' Court decreed the matter "Settled, Ended and Discontinued" and

remanded the matter to the register of wills.[6]

On July 22, 2010, the plaintiff filed a petition for ancillary administration of the decedent's estate (ancillary administration) in the Court of Probate for the district of Colchester (probate court). The Connecticut relatives objected to the admission of the will for ancillary administration. The probate court, Judge Jodi M. Thomas, held a hearing on the objection to the ancillary administration and thereafter issued her opinion. In her opinion, the probate judge stated in part: "The Court finds that the Will is certainly questionable in appearance, having been handwritten in at least two different hands and having no witnesses. There is little doubt that it would not be admitted primarily under Connecticut law. There was also evidence adduced that undue influence by the [plaintiff] and [Mae Fedus] over the decedent may have occurred; that the decedent was a meticulous and capable woman, who would not have left such an important legal decision to chance by virtue of a handwritten, unwitnessed document; and that her bounty during her lifetime extended beyond the [plaintiff] and his family to her other siblings and their families (to which the Will is contrary).[7]" (Footnote in original.) *In re Estate of Rose F. Fedus*, Probate Court, district of Colchester (January 3, 2011) (25 Quinnipiac Prob. L.J. 263, 266–67 [2012]).

On the basis of the foregoing, the probate court issued an order stating: "[T]he court declines to admit the alleged instrument, on an ancillary basis, as the last will and testament of the decedent, Rose Fedus, at this time as 'sufficient objection' has been shown within the meaning of . . . § 45a-288. It is now incumbent upon the applicant to 'offer competent proof of the contents and legal sufficiency of the will' as per . . . § 45a-288 and in accordance with other applicable Connecticut law."[8] Id., 267. The plaintiff appealed from the order of the probate court to the Superior Court. See General Statutes § 45a-186 (a).

In his complaint, the plaintiff alleged that he was aggrieved by the order of the probate court for the reason that (1) his petition for ancillary probate satisfies the requirements of § 45a-288 (a) as the will has been proved and established out of this state by a court of competent jurisdiction, the petition includes an authenticated and exemplified copy of the will and the record of the proceedings proving and establishing the will, and it includes a complete written statement of the decedent's property in Connecticut; (2) the adjudication by the register of wills and the adjudication on appeal by the Orphans' Court are final and conclusive and are entitled to full faith and credit pursuant to the constitution of the United States, article four, § 1; (3) the adjudications of the register of wills and on appeal therefrom of the Orphans' Court are final and conclusive, therefore the Connecticut relatives' claims having been fully and

fairly litigated in Pennsylvania are barred by the doctrines of res judicata and collateral estoppel.[9] During trial, the plaintiff amended his complaint, without objection from the Connecticut relatives, to allege that the objections of the Connecticut relatives to the admission of the will to ancillary probate are without merit and are not sufficient objection to allow the probate court to preclude the will from ancillary administration and/or to require competent proof of the contents and legal sufficiency of the will.

Prior to trial, at the request of the court, the parties submitted pretrial briefs. In their briefs, the Connecticut relatives contended that the appeal should be decided as a matter of law on the grounds that the will is legally insufficient, vague, contrary to Connecticut law and public policy, and that it had been revoked. They further argued that, if they were to prevail on their legal claims, there would be no reason to present evidence regarding the decedent's testamentary capacity and whether she was under undue influence. The trial court rejected the Connecticut relatives' request to decide the appeal on the legal issues they raised apart from the facts, and commenced trial on October 2, 2013.

At trial the plaintiff testified as to his relationship with the decedent and how her will came to be written. The plaintiff grew up in the house his mother, Mae Fedus, shared with the decedent and was raised by the two women. He lived in the house until he was thirty-five years of age when he married and moved to a nearby town.[10] After he married, the plaintiff ate lunch with the decedent and Mae Fedus in their house daily during the work week.[11] One day a week after work, the plaintiff took Mae Fedus to the grocery store and then spent the night in the house. He, his wife, June A. Goodwin (June Goodwin), and their daughters[12] visited the decedent and Mae Fedus on some weekends and on holidays. The plaintiff, his wife, and their three daughters had a close relationship with the decedent, who treated his daughters as if they were her grandchildren. She babysat for them and provided financial support for their education related activities. The decedent also gave savings bonds to the plaintiff's daughters on each birthday and at Christmas.

The decedent suffered a stroke in April, 2000, was hospitalized, and spent more than five months in a rehabilitation facility. She returned to the house in October, 2000, and was confined to a bed in the dining room. Due to the stroke, she could not walk and therefore used a wheelchair. The stroke, however, did not affect her mental capacity, cognition, or her speech.[13]

Stephen Fedus sent the decedent and Mae Fedus a Christmas card postmarked December 15, 2000. The Christmas card contained a note written by Stephen Fedus, which stated that "<u>if one of us should die</u>, the probate court and the lawyers will again have a ball,

including estate taxes. Rose and Mae we have to do some planning with Alyce & nephew John. I can't do it myself." (Emphasis in original.) In his note, Stephen Fedus referenced extensive litigation regarding the estate of one of their relatives, Frances Schofield.[14]

On December 21, 2000, while the plaintiff was having lunch at the house, the decedent asked him to write her will.[15] The plaintiff was surprised by the decedent's request as she had never before discussed her will with him. The decedent, who was then eighty-nine years old, gave the plaintiff a small pad of paper and told the plaintiff what to write. He used his own pen. When he had finished writing, the plaintiff handed the pad of paper to the decedent to review. The decedent reviewed the will, and, using her own pen, added her middle initial "F." in two places, crossed out the words "my mother," and added the words "and Mae Fedus." See footnote 5 of this opinion. She then instructed the plaintiff to draw a line at the bottom of the page for her to sign her name. After the decedent signed her will, she placed it on the hutch next to her bed in the dining room. The plaintiff and the decedent never discussed the will again. Over time, the plaintiff forgot about writing the will for the decedent. The decedent died approximately six years after signing the will.

After the decedent died, Mae Fedus lived alone in the house until April, 2008, when she was moved to a nursing home, where she was diagnosed with dementia. As Mae Fedus' cognitive abilities declined, the house became increasingly disordered and cluttered. She neglected to pay her bills. Between 2006 and 2008, the plaintiff inquired of Mae Fedus whether she had probated the decedent's estate. She assured him that she had, but in reality she had not.

After Mae Fedus was moved to a nursing home, June Goodwin, with the assistance of friends, began to sort through the contents of the house. They found a great deal of accumulated paperwork, including bills, receipts, bank statements, letters, and other documents that were stacked in piles on the floor. One day in October, 2008, Liz Fazzolari, a friend of June Goodwin, found the decedent's will in a stack of papers. She gave the will to June Goodwin who in turn gave it to the plaintiff when he came to the house at lunch time. The plaintiff had forgotten about the will, but seeing the paper caused him to remember that he wrote it at the decedent's request. The plaintiff took the will to a Pennsylvania attorney to probate the decedent's estate. The plaintiff and June Goodwin filed affidavits with the Philadelphia register of wills attesting to the decedent's signature on the will.[16]

After the plaintiff presented his evidence, the Connecticut relatives filed a motion to dismiss for failure to make out a prima facie case. See Practice Book § 15-8. The Connecticut relatives raised numerous argu-

ments as to the legal sufficiency of the will and attached a number of supporting documents to their trial brief. The trial court denied the motion to dismiss.

The Connecticut relatives then presented evidence, which consisted of testimony from Stephen Fedus concerning his efforts to have the co-owners of the farm divide it among themselves to avoid what he opined would be costly estate taxes, and legal and probate costs. He also testified about other will contests involving the decedent.[17] The Connecticut relatives also placed in evidence a report from a handwriting expert regarding the different handwritings in the will and the different colors of ink used. They argued that the manner in which the decedent prepared her will was very much out of character, as she had strong opinions about wills and had participated in a will contest involving the estate of her aunt, Frances Schofield, in the Probate Court for the district of West Hartford. Some of the documents the Connecticut relatives submitted were to demonstrate that during her life, the decedent had objected to Schofield's will, arguing that Schofield was quite elderly and no physician was present when she made her will. The decedent was of the opinion that Schofield was under undue pressure due to her advanced age and poor health at that time. The Connecticut relatives argued that the decedent would never have left something as important as a will to a handwritten document.

At the conclusion of all evidence, the court issued an oral opinion. The court stated: "By way of findings of fact, the court accepts, completely, the testimony in court yesterday of [the plaintiff] to the effect that he wrote down, at [the decedent's] direction, the very words that she spoke. Those words were, 'Last will and testament of Rose Fedus. I, Rose Fedus,' he initially wrote, later she added the F., 'leave all my money and property,' so forth. The court accepts that the pen used by [the decedent] when she took the paper back and made the two corrections that [the plaintiff] testified about explained the different inks, the handwriting expert report points out.

"All of the facts are completely in startling concurrence. It's rare that there are—the only loose ends in this case from a factual standpoint are the staples in the upper left-hand corner of the original will, a factoid which is of utterly no significance in the court's opinion.

"The court finds that [the decedent] was a wonderful woman of great strength of character and will. Of course, I do not know what the previous preceding evidence was, but I do note that the probate decree indicated that there may have been some undue influence in the same area of the opinion that indicates what a strong willed person [the decedent] was. I don't know how those two logically correlate, but there is not the slightest doubt in my mind that there is not a shred of

evidence of undue influence, and there is ample evidence of testamentary capacity and full faculties on the part of the deceased . . . .

"To tie this into the statute, the proponent of the will has presented to the Colchester Probate Court, and here, an authentic and exemplified copy of the will, which the court finds was proved and established by a court of competent jurisdiction, the register of wills in Pennsylvania, and that that authentication and exemplified copy has indeed been filed in Connecticut. The court, sitting as the court of probate, finds that there is no sufficient objection proffered at this hearing to that will; therefore, [§] 45a-288 (c) is not applicable.[18]

"The court notes that, in spite of these factual findings, the decree of the Pennsylvania court is entitled to full faith and credit. The court has had a full hearing, and all parties have had the opportunity to present any evidence that they wish, so the issue of full faith and credit does not need to be reached since the court has heard all the evidence and has found that the will is appropriate, and no sufficient objection has been proffered by the opponents. For that reason, the appeal is sustained." (Footnote added.) The defendant appealed from the judgment of the trial court.

On appeal to this court, the defendant claims that the trial court erred by (1) admitting the decedent's will to ancillary administration pursuant to § 45a-288 because the will is insufficient, as a matter of law, to convey real property in this state; (2) denying the Connecticut relatives' motion to dismiss; and (3) finding, as a matter of law, that § 45a-288 vests the court of probate with unfettered discretion to determine the existence of sufficient objection, applying a preponderance of the evidence standard to prove the existence of "sufficient objection" where the language of § 45a-288 requires only a showing, and finding that no sufficient objection had been "proffered" even though the statute uses the word "shown." In his brief on appeal, the defendant claims that it was error for the trial court not to address the Connecticut relatives' objections to the legal sufficiency of the will that they raised in their trial and reply briefs in the Superior Court. We disagree. The legality of the will was not the issue before the trial court; the issues before the trial court were whether the plaintiff had complied with § 45a-288 and whether there was sufficient objection to the will to preclude its being filed and recorded.

The standard of review in probate appeals is well known. "In a probate appeal . . . the Superior Court's jurisdiction is statutory and limited to the order appealed from. The issues presented for review are those defined in the reasons of appeal. The Superior Court cannot consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. This is so even with the consent of

the parties to the appeal because the court has subject matter jurisdiction limited only to the order or decree appealed from." *Silverstein's Appeal from Probate*, 13 Conn. App. 45, 58, 534 A.2d 1223 (1987). The Superior Court "tries the questions presented to it *de novo*, but in so doing it is . . . exercising a special and limited jurisdiction conferred on it by the statute authorizing appeals from probate." (Emphasis in original; internal quotation marks omitted.) Id. 53–54.

In the plaintiff's appeal from probate, the trial court concluded that there was no sufficient objection to the will pursuant to § 45a-288, that the decedent had testamentary capacity and that there was no evidence of undue influence. The trial court did not determine whether the will was legally sufficient, as the issue before the trial court was whether there was sufficient objection to the will under § 45a-288. "[T]he Superior Court's jurisdiction is statutory and limited to the order appealed from." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 71 Conn. App. 565, 570, 803 A.2d 919, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002). We therefore will address only the defendant's claim that the court improperly determined that there was no sufficient objection to the will to preclude it from being filed and recorded in the probate court. See General Statutes § 45a-288.

The defendant's claim raises a question of statutory interpretation. "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us to first consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Mickey* v. *Mickey*, 292 Conn. 597, 613–14, 974 A.2d 641 (2009). Statutory construction concerns a question of law over which we exercise plenary review. See *In re Avirex R.*, 151 Conn. App. 820, 828, 96 A.3d 662 (2014).

I

The defendant's principal claim on appeal is that the will is not admissible to probate under § 45a-288 because, among other things, it could not pass title to the farm under Connecticut law, which controls the transfer of real property located in the state. The defendant's claim is predicated on the common law doctrine of lex loci rei sitae.[19] To that end, the defendant quotes

the United States Supreme Court as follows: "It matters not how effective the instrument may be to pass real property in [another state], it must be executed in the manner prescribed by the law in force in the district to pass real property situated there, and its validity must be established in the manner required by that law." *Robertson* v. *Pickrell*, 109 U.S. 608, 610, 3 S. Ct. 407, 27 L. Ed. 1049 (1883).

In modern times, the law of Connecticut permits a will executed in accordance with the law of another state in which it was executed to pass real property in this state. The Connecticut legislature modified the common law of lex loci rei sitae in 1856 when it enacted the precursor of General Statutes § 45a-251. See *Irwin's Appeal from Probate*, 33 Conn. 128, 140 (1865). Section 45a-251 provides in relevant part: "A will . . . shall not be valid to pass any property unless it is in writing, subscribed by the testator and attested by two witnesses, each of them subscribing in the testator's presence; *but any will executed according to the laws of the state . . . where it was executed may be admitted to probate in this state and shall be effectual to pass any property of the testator situated in this state.*" (Emphasis added.)

Section 45a-288 (a) provides in relevant part with respect to a "will conveying property situated in this state [that] has been proved and established out of this state by a court of competent jurisdiction . . . any person interested in such property may present to the court of probate . . . an authenticated and exemplified copy of such will and of the record of the proceedings proving and establishing the will and request that such copies be filed and recorded. The request shall be accompanied by a complete statement in writing of the property and estate of the decedent in this state. If, upon a hearing . . . no sufficient objection is shown, the court of probate shall order such copies to be filed and recorded, and they shall thereupon become a part of the files and records of such court, and shall have the same effect as if such will had been originally proved and established in such court of probate. . . ."

In short, § 45a-288 (a) requires that an interested party must present the probate court with (1) an authenticated and exemplified copy of the will, (2) a copy of the record proving and establishing the exemplified copy of such will, (3) a request that the copies be filed and recorded, and (4) a complete statement of the decedent's property within the state. To present sufficient objection to the filing and recording of a will executed in a foreign state, one may, as the plaintiff argues, present evidence that the record does not establish that the will was proved and established in a foreign jurisdiction, that the petitioner failed to produce an authenticated and exemplified copy of the will, that the decedent did not own property within the state, or that a death has

not, in fact, occurred.

In the present case, the trial court found that the plaintiff had presented the probate court with an authenticated and exemplified copy of the decedent's will that the court found was proved and established by a court of competent jurisdiction, the Philadelphia register of wills.[20] The court's findings as to the documents the plaintiff presented to the probate court are in accord with the requirements of § 45a-288 (a). Our review of the record supports the court's findings. The Connecticut relatives presented no evidence that the decedent's will did not comply with the law of the commonwealth of Pennsylvania regarding the execution of a will, that it was not properly probated with the register of wills, or that the record of the proceedings establishing and proving the will in Pennsylvania were not in order. They presented no evidence that the plaintiff had failed to request that copies of the documents submitted be filed and recorded, or that he failed to provide a description of the property in Connecticut. We therefore conclude that the trial court properly determined that "no sufficient objection" to the will had been shown, and therefore properly sustained the plaintiff's appeal.

## II

The defendant also claims that the trial court improperly failed to grant the Connecticut relatives' motion to dismiss for failure to make out a prima facie case pursuant to Practice Book § 15-8. In their motion to dismiss, the Connecticut relatives argued that the plaintiff had failed to prove that the document he wrote for the decedent was a will that conveyed property in Connecticut and that it had been proved and established by a court of competent jurisdiction. For the reasons stated in part I of this opinion, we conclude that the trial court properly denied the Connecticut relatives' motion to dismiss. The only issue before the trial court was whether sufficient objection had been made to the admission of the will under § 45a-288, not whether the will was legally sufficient.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The revised appeal from the order and decree of the Court of Probate for the district of Colchester names the following defendants: Colchester Probate Court, Stephen Fedus, Jr., Alyce Daggett, John Fedus, Madeline Goodwin, Melissa Goodwin, Michelle Goodwin, and the estate of Mae C. Fedus. Only John Fedus is a party defendant in the appeal to this court, and we refer to him as the defendant.

[2] General Statutes § 45a-288 (a) provides in relevant part: "When a will conveying property situated in this state has been proved and established out of this state by a court of competent jurisdiction, the executor of such will or any person interested in such property may present to the court of probate . . . an authenticated and exemplified copy of such will and of the record of the proceedings proving and establishing the will and request that such copies be filed and recorded. The request shall be accompanied by a complete statement in writing of the property and estate of the decedent in this state. If upon hearing, after such notice to . . . parties in interest as the court orders, no sufficient objection is shown, the court of probate shall order such copies to be filed and recorded, and they shall thereupon become a part of the files and records of such court, and shall have the

same effect as if such will had been originally proved and established in such court of probate. . . .''

[3] The decedent was predeceased by her sister Anne Fedus and her brother Frank Fedus. The defendant is the son of Frank Fedus.

[4] The plaintiff also filed an inventory stating "Total Personal Property and Real Estate [of] $211.02.''

[5] The handwritten document the plaintiff filed states:
"Last will and testament of Rose *F.* Fedus
I Rose *F.* Fedus, leave
all of my money and
property to James K.
Goodwin in trust for his
children and Mae Fedus, ~~my mother~~
James' mother.
If James Goodwin
should die, I leave it
to be held in trust by
June A. Goodwin for children
Michelle Rose Goodwin,
Melisa Anna Goodwin and
Madeline Anne Goodwin,
*and Mae Fedus*.
                    Rose F. Fedus [signed]
                    Rose F. Fedus [printed]
                    12/21/00'' (Emphasis added.)

[6] The decree from the Orphans' Court states: "AND NOW, this 24th day of May 2010, upon consideration of petition filed on May 3, 2010 to withdraw the Petition seeking to appeal the probate of the writing dated December 21, 2000 filed by John Fedus on October 8, 2009, it is hereby ORDERED that this matter is marked as SETTLED, ENDED AND DISCONTINUED. The record is hereby REMANDED to the Register of Wills.'' The decree is signed by Judge John W. Herron.

[7] In a footnote, the probate court stated: "These questions are not directly before this Court in this decision. However, they are relevant to the question of whether sufficient objection has been shown under . . . §45a-288.'' *In re Estate of Rose F. Fedus*, Probate Court, district of Colchester (January 3, 2011) (25 Quinnipiac Law Prob. L.J. 263, 267 n.2 [2012]).

[8] In its opinion, the probate court also stated that the plaintiff "claims that the heirs' objections are barred by the doctrine of res judicata and that this Court is precluded from denying [his] application under the Full Faith & Credit Cause of the U.S. Constitution. Essentially, these arguments are based upon the fact that the Will was admitted in a court of competent jurisdiction and the appeals period has run in that jurisdiction. Apparently, the heirs filed an appeal from the Philadelphia probate court and later withdrew that action. No evidence was adduced at trial concerning the reasons for that withdrawal.'' (Footnote omitted.) *In re Estate of Rose F. Fedus*, supra, 25 Quinnipiac Prob. L.J. 266.

In a footnote, the probate court stated: "However the Court does not believe this argument is valid in this context. [Section] 45a-288 necessarily assumes that judgment and/or issues were rendered or determined in another court. Indeed, that is the purpose of the statute, which directs the court to determine if sufficient objection has been shown to the admission of a will proved and established in another state. . . . To allow the doctrine of res judicata to serve as a bar to objections would render the express statutory directive meaningless. A similar argument would apply to the Full Faith and Credit Clause proposition. Its application might mean that the Connecticut statute is unconstitutional and such a determination is not within this Court's jurisdiction.'' (Citation omitted.) Id., n.1.

[9] On February 24, 2012, the plaintiff filed a motion claiming as a matter of law that summary judgment should be granted in his favor on the ground of full faith and credit or res judicata. The court, *Martin, J.*, denied the motion for summary judgment.

[10] The plaintiff, a graduate of Gallaudet University, is hearing impaired and testified by means of an interpreter.

[11] The plaintiff was employed nearby by the United States Navy.

[12] The plaintiff's daughters are Michelle Rose Goodwin, Melissa Anna Goodwin, and Madeline Ann Goodwin.

[13] The plaintiff placed into evidence the deposition transcript of Alfred E. Stillman, the decedent's physician from January, 2001, until the time of her death. Stillman is board certified in internal medicine, gastroenterology, and geriatrics. He provided his medical services for the decedent in her home. During his initial visit, he performed a physical examination of the decedent and administered to her the "mini mental state examination,'' among other

things. At the conclusion of his initial visit, Stillman had no concerns regarding her mental status or her cognitive function, which did not change from the first time he met her until she died. He opined that her cognition was "[s]uperb" and that she was an "excellent conversationalist." The stroke had no effects on the decedent's mental cognition. He found her to be a very independent woman.

Stillman found that Mae Fedus was devoted to the decedent and took good care of her. The sisters were loving, caring, and solicitous of one another. The decedent, however, was the more verbal of the two. She gave the directions, which Mae Fedus followed without rancor or feeling that she was the lesser of the two. Stillman opined that Mae Fedus was not able to influence the decedent; no one influenced the decedent's actions except the decedent. Stillman's medical records also indicated that the house in which the decedent and Mae Fedus lived was disheveled and cluttered with boxes.

[14] The note in Stephen Fedus' Christmas card states in part: "Frank's dealing with Ann's estate has cost us several thousands of dollars and Mae dealing with Joe [undecipherable] on Mon House has cost also several thousands of dollars, all because of not seeking any help from me."

[15] Mae Fedus was out of the house doing errands at the time.

[16] The plaintiff also testified that the Connecticut relatives objected to the probating of the will in Pennsylvania, but withdrew their objection before trial in the Orphans' Court. A judge of the Orphans' Court issued a decree ordering the matter "settled, ended and discontinued." The Orphans' Court remanded the record to the register of wills. After the will was admitted to probate in Pennsylvania, the plaintiff filed a petition for ancillary administration of the will with the documents required by § 45a-288 in the probate court. The Connecticut relatives objected to the ancillary administration, claiming that the decedent lacked testamentary capacity and was under undue influence when she wrote the will. The probate court found sufficient objection pursuant to § 45a-288 and declined to file and record the will for ancillary administration.

[17] Stephen Fedus testified about his relationship with the decedent and Mae Fedus. He also testified about other will contests involving his family, one in particular in which he and the decedent sued their sister Alyce Daggett with respect to the estate of their aunt, Frances Schofield.

Stephen Fedus also testified about statements that he made in a Christmas card he sent to the decedent and Mae Fedus in December, 2000, and about a January, 2006 correspondence he sent to the decedent and Mae Fedus. He encouraged the decedent and Mae Fedus to do some planning about the farm and he proposed dividing the farm among the co-owners to avoid selling it.

[18] General Statutes § 45a-288 (c) provides that "[i]f the court of probate finds sufficient objection to such will, the applicant shall offer competent proof of the contents and legal sufficiency of the will except that the original thereof need not be produced unless so directed by the court of probate."

[19] Lex loci rei sitae is defined as: "The law of the place where a thing or subject-matter is situated. The title to realty or question of real estate law can be affected only by the law of the place where the realty is situated." Black's Law Dictionary (5th Ed. 1979).

[20] The record demonstrates that when the plaintiff filed the petition for ancillary administration of the will, he included a certificate from the register of wills that stated: "I . . . DO CERTIFY the foregoing to be a true and perfect copy of the LAST WILL and TESTAMENT with CODICIL in the ESTATE of ROSE FRANCES FEDUS, a/k/a ROSE FEDUS, DECEASED, dated DECEMBER 21, 2000, together with copy of OATH of NON-SUBSCRIBING WITNESSES dated OCTOBER 8, 2008, PETITION filed and DECREE issued wherein LETTERS of ADMINISTRATION CUM TESTAMENTO ANNEXO were granted unto JAMES K. GOODWIN, as ADMINISTRATOR C.T.A. on OCTOER 8, 2008, under RECORD NO.W5324-2008, as the same remains on file and of record in this office."